MICHAEL WALSH, Plaintiff-Appellee, *v.* A. D. CONNER, INC.,
Defendant-Appellant.

First District (3rd Division)    No. 79-0410

Opinion filed August 19, 1981.

Frank Glazer, Ltd., of Chicago (Frank Glazer and Harry Ray Chiles, Jr., of counsel), for appellant.

Philip E. Howard, Ltd., of Chicago (William J. Harte, of counsel), for appellee.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

The plaintiff, Michael Walsh, brought this action to recover damages for personal injuries he suffered as the result of the alleged negligence of the defendant. A jury returned a verdict in favor of the plaintiff and against the defendant in the amount of $87,000. The defendant's motion for judgment notwithstanding the verdict or, in the alternative, a new trial was denied, and the defendant appeals.

On July 2, 1973, the plaintiff was employed by Illinois Service Oil Company (Illinois Service) as an attendant and acting manager of a Texaco gas station. On the evening of July 2, the defendant delivered gasoline to the station in its tank truck. The plaintiff, pursuant to procedures established by his employer, climbed up to the top of the truck, broke the seals on the truck, and visually inspected the contents in order to determine whether the correct amount of gasoline was contained therein. A ladder located at the rear of the truck provided the only means of access to the top of the truck.

After inspecting the contents of the truck, the plaintiff began to descend the ladder. His foot slipped off the top rung, and he fell approximately eight feet to the ground. The plaintiff landed on his right foot which was injured. It is the plaintiff's contention that the defendant was negligent in failing to provide him with a reasonably safe means of access to the top of the truck.

At trial the plaintiff described the manner in which he descended the ladder. The plaintiff sat down on the metal edge of the trough which was located on the top of the truck. He placed his feet on the first rung of the ladder which was approximately 18 inches below the edge. The plaintiff placed his hands on the lip of the edge because the handrail provided did not extend to the top of the truck. The plaintiff next attempted to turn his body around from this position so that he could descend the ladder facing the truck. In the process of turning, the plaintiff's right foot slipped off the rung, and he fell to the ground.

The plaintiff explained that there was an alternative way to descend the ladder. He stated that, while facing the front of the truck, he could have squatted, gripped the sides of the truck and extended his foot blindly until he felt the top rung of the ladder. The plaintiff testified that after testing both means of descent, he concluded that the first method was better.

The plaintiff additionally testified that some truck drivers pumped gasoline through a meter which would record the amount of the delivery. He did not recall if the defendant's drivers ever used a meter during their deliveries. The plaintiff asserted that the use of a meter eliminates the necessity of inspecting the contents of the truck.

The plaintiff and his doctors testified concerning the nature and

extent of his injuries. This testimony will not be discussed because it is irrelevant to this appeal.

Plaintiff's expert, Stanley Sedivy, testified that the ladder on the truck did not provide a reasonably safe access to the upper portion of the truck. He stated that the ladder was not in accordance with the accepted design criteria of the American Standard Institute. Sedivy asserted that the spacing between the steps of the ladder was too great, that the handrail should have extended 3½ feet above the top of the truck, and that the width of the steps was too small. Sedivy described the manner in which one could modify the width of the steps and the handrail in order to conform with the safety standards. He stated that the cost of said modification would be approximately $70.00.

Sedivy further testified that there was no safe manner in which to descend the ladder. Concerning the two ways described by the plaintiff, Sedivy stated that neither method was safer than the other.

Eugene Lietz, part owner of the defendant corporation, testified that he was unaware of any ladder design which was different from the one on defendant's truck. He did not participate in the design or manufacturing of the truck which was purchased from Heil & Heil. He asserted that there would be problems loading the trucks at the refinery if a ladder extended 3½ feet above the top of the truck.

Lietz stated that in 1973 the defendant delivered gasoline to 250 service stations. Only Illinois Service and one other station requested that their employees be permitted to inspect the contents of the delivery by climbing to the top of the truck. Such a request was against defendant's policy. As a safety precaution, the defendant did not allow anyone near its truck except the driver. However, the defendant made an exception for Illinois Service, its customer of 12 to 15 years.

Lietz further testified that if a service station asked his drivers to pump the gasoline through a meter, the request would be honored. However, Lietz stated that if the gasoline was metered, the pumping of the gasoline took twice as long.

Joseph Kissane testified that he was the driver of the truck involved in the accident. He stated that the plaintiff did not fall from the top step of the ladder. Kissane maintained that the plaintiff's foot slipped off the bottom step of the ladder, which was approximately 18 to 20 inches from the ground. He further testified that although no one requested that he use a meter while unloading the gasoline, he could have done so on the day of the accident. However, the use of the meter would take twice as long and was a "real pain."

The defendant argues that the trial court should have directed a verdict in its favor because it owed no duty to the plaintiff and because the plaintiff was guilty of contributory negligence as a matter of law.

The defendant denies that it owed any duty to the plaintiff. A duty is an obligation imposed by the law upon a person which requires that person to conform to a certain standard of conduct for the protection of another against an unreasonable risk. (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 328 N.E.2d 538; *Laflin v. Estate of Mills* (1977), 53 Ill. App. 3d 29, 368 N.E.2d 522.) The determination of the question of duty, whether the parties stood in such a relationship to one another that the law will impose upon one an obligation of reasonable conduct for the other's benefit, is an issue of law to be resolved by the court. (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 308 N.E.2d 617; *Mieher v. Brown* (1973), 54 Ill. 2d 539, 301 N.E.2d 307.) The decision to impose a duty turns in part upon the probability or foreseeability that the defendant's negligent conduct will result in harm to the plaintiff, but also upon the desirability in terms of social policy of the extension of such a duty. *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 367 N.E.2d 1250; *Laflin v. Estate of Mills.*

■■ In the instant case the defendant knew that Illinois Service required its employees to examine the amount of the gasoline in the tank by climbing to the top of the tank truck. Although this requirement was against the defendant's policy for safety reasons, the defendant made an exception for Illinois Service, apparently to satisfy a loyal customer. We believe that because the defendant made a conscious decision to allow the employees of Illinois Service to climb to the top of its trucks, the defendant owed a duty to these employees to provide a reasonably safe means of access thereto.

It was certainly foreseeable that if the plaintiff was permitted to climb the truck via an unsafe ladder, he could fall and suffer serious injuries. The defendant argues that there was no evidence to establish that it knew or should have known that the design of the ladder was unsafe. We have examined several photographs of the truck and its ladder (Plaintiff's Exhibits one through seven) which reveal that the handrails of the ladder do not extend to the top of the truck. We believe that it did not require a design expert to foresee the likelihood of injury to one attempting to descend this ladder.

The defendant also contends that the imposition of a duty in the instant case is undesirable because of the broad social ramifications. Defendant argues that our holding will require consumer-owners to modify existing products in order to make them more reasonably safe. We disagree.

Our opinion, which is limited to the factual situation presented in this case, states that once the defendant determined that it would allow the plaintiff access to the top of the truck, it had a duty to provide a safe means of access. The defendant was obviously aware of the risks involved in the use of its ladder since it prohibited employees of 248 service station

customers from using it. The defendant could have refused to change its policy for Illinois Service, or it could have used the meter to satisfy Illinois Service's requirement of ascertaining the amount of gasoline delivered. If the defendant did not wish to incur the time delay occasioned by the use of the meter, it could have modified the ladder at minimal expense in the manner described by the plaintiff's expert. We therefore believe that these facts compel a conclusion that the defendant did owe a duty to the plaintiff.

The defendant also argues that the unsafe manner in which the plaintiff attempted to descend the ladder constituted contributory negligence as a matter of law. It contends that the plaintiff's decision to rotate his body while sitting on the top of the truck was the proximate cause of his injuries.

When an employee elects a more dangerous way of doing his work when safer choices are available, he may be guilty of contributory negligence. (*Haberman v. Commonwealth Edison Co.* (1980), 84 Ill. App. 3d 475, 405 N.E.2d 830.) However, the determination of the existence of contributory negligence is ordinarily a question of fact for the jury. *Kuhn v. General Parking Corp.* (1981), 98 Ill. App. 3d 570, 424 N.E.2d 941; *Laflin v. Estate of Mills.*

The defendant cites *Harris v. Union Stock Yard & Transit Co.* (1975), 29 Ill. App. 3d 1072, 331 N.E.2d 182, in which this court affirmed the directing of a verdict on the issue of contributory negligence. In *Harris*, the plaintiff left the Chicago Amphitheatre where he had been working and was walking to the parking area for his automobile. When he encountered a standing railroad flatcar which obstructed his direct route, the plaintiff attempted to climb over the car. The plaintiff slipped off the car and was injured. In affirming a directed verdict in favor of the owner of the Amphitheatre, this court held that the plaintiff's attempt to clamber over the flatcar while ignoring available alternative routes of known safety was the proximate cause of his injury.

■■ We believe that the facts in *Harris* are clearly distinguishable from the facts in the instant case. In the case at bar, the plaintiff had two alternative ways in which to descend the ladder. The plaintiff testified that he had tested both means of descent and had concluded that it was better to sit on the truck and rotate his body. The plaintiff's expert witness testified that neither method was safer than the other. We cannot say, as a matter of law, that the plaintiff ignored an alternative route of known safety. Thus, the issue of the existence of any contributory negligence was a question of fact for determination by the jury.

The defendant alternatively argues that it was entitled to a new trial because of the erroneous admission of certain testimony. The defendant objects to (1) Sedivy's testimony that the ladder did not satisfy certain

design criteria for safety; (2) Sedivy's testimony concerning the proposed modification of the ladder; and (3) the cross-examination of Lietz concerning the safety of Sedivy's proposed modification. The defendant contends that this testimony "gave the impression to the jury that the defendant was under a duty."

■■ As we have previously discussed, the defendant did owe a duty to the plaintiff to provide a reasonably safe means of access. Sedivy's testimony concerning the ladder's failure to satisfy safety requirements was relevant to the issue of whether defendant breached its duty. The testimony concerning the suggested modification of the ladder was relevant to the issue of whether the imposition of the duty would place an undue burden upon the defendant. We find no error in the admission of this testimony.

The defendant also contends that he was prejudiced by the court's instruction No. 2 which provided, in pertinent part, that:

"The plaintiff claims he was injured and sustained damage while exercising ordinary care and that the defendant was negligent in one or more of the following respects:

Failed to provide the plaintiff with a reasonably safe method of checking the amount of defendant's delivered gas load;

Failed to provide plaintiff with a reasonably safe method of climbing to and from the top of the defendant's tanker truck;

Failed to use ordinary care to provide plaintiff with a safe ladder on which he could climb while going to and from the top of the gas tanker when checking the gas load being delivered;

Failed to warn the plaintiff against using a method of descending the ladder, which the defendant maintains was an unsafe method. The plaintiff further claims that one or more of the foregoing was a proximate cause of his injuries * * *."

■■ The defendant argues that this instruction wrongly advised the jury that it had the obligation to correct any alleged design defects. Our reading of the instruction does not support this interpretation. The instruction merely contains the theory of plaintiff's claim for relief and was proper.

For the foregoing reasons, the judgment of the circuit court of Cook County is hereby affirmed.

Affirmed.

RIZZI, P. J., and McNAMARA, J., concur.