JOHN L. ZIMMERMANN, Plaintiff-Appellant, *v.* FRANK NETEMEYER, *et al.*, Defendants-Appellees.

Fifth District   No. 83—343

Opinion filed February 10, 1984.—Rehearing denied March 16, 1984.

HARRISON, J., dissenting.

Ralph T. Stenger, of Belleville, for appellant.

James B. Wham, of Wham & Wham, of Centralia, for appellees.

JUSTICE JONES delivered the opinion of the court:

Plaintiff appeals the dismissal of count II of his amended complaint for personal injuries for its failure to state a cause of action. The defendants are tavern keepers doing business in Albers, Illinois, as The Diamond Tavern or The Diamond Lounge (tavern). The amended complaint alleges that the tavern has a parking lot for patrons on its south side, which abutted Illinois Route 161 and lacked a shoulder area. Plaintiff was a passenger in a car being driven in a westerly direction on Route 161 in the evening hours of June 1, 1978. A patron left defendant's tavern, entered his car which was parked "head-in" in the parking lot and, without his headlights on and as a maneuver made necessary by the size and location of defendant's parking lot, backed his car onto Route 161 and into the path of the car in which plaintiff was riding, thus causing a collision in which plaintiff was injured. We are to consider whether under the facts of this case the defendants-landowners were under a duty to take measures for the protection of the plaintiff from the injury he received. We hold that they were not under any such duty.

Since we are determining the propriety of dismissing count II of plaintiff's amended complaint, we must accept all properly pleaded facts as true and are concerned only with the question of law presented by the pleadings. (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 328 N.E.2d 538.) Plaintiff candidly admits in his brief that "no prior court decision has been found by plaintiff as direct authority in support of the duty asserted on defendants under this factual situation" but goes on to assert that "the general law of each person's duty not to act in a way that exposes others to an unreasonable risk of harm is sufficient support for the plaintiff's cause of action." The central theme of plaintiff's argument is that since defendants knowingly provided the narrow space in front of their building as additional parking space for customers who would frequently leave the tavern under the effect of intoxicants and back their cars onto the adjacent Route 161 under the conditions described, they were under a duty to the plaintiff to take measures to protect the plaintiff from the injury he received. Plaintiff also states in his brief, we think with further candor as to the sweep of the rule he proposes, that "the defend-

ants' duty to regulate their conduct as a landowner in contemplation of the presence of travelers upon the adjacent public way applies irrespective of whether they are owners of a dramshop or any other business."

Plaintiff's amended complaint was in two counts. Count I alleged a cause of action based upon a violation of the Dramshop Act (Ill. Rev. Stat. 1977, ch. 43, par. 135). Count II was framed in terms of common law negligence and did not rely upon the Dramshop Act in any way. The trial court dismissed count II in a judgment in which the court held that no cause of action was alleged because no duty was owed by the defendants to the plaintiff under the facts alleged. The requisite findings of Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)) were made as a presage to the appeal. Count II of plaintiff's amended complaint charged defendants with three specific acts of negligence: (1) failing to "properly post" the parking lot to prevent dangerous "head-in" parking by customers who would by necessity back their automobiles across a State highway near a blind curve thereon; (2) failing to "chain or otherwise guard or fence" their parking lot, known to be used for "head-in" parking by customers who had to back their motor vehicles across a State highway near a blind curve after consuming alcoholic beverages, so as to prevent the use of the parking lot in a manner hazardous and dangerous to other drivers traveling in a westerly direction on the highway; and (3) causing one of its customers "to back his automobile across a highway near a blind curve for westerly traffic requiring him to locate his said automobile in the wrong lane and in the path of an oncoming automobile * * *."

Plaintiff seeks to impose a duty upon defendants-landowners although plaintiff was never on defendants' land and the accident complained of neither occurred upon defendants' land nor was alleged to have occurred because of any structure, artificial condition or obstruction of any kind or nature located upon defendants' land. It is unnecessary for us to determine whether the plaintiff would fit into a category as an invitee, licensee or trespasser because the collision did not occur on defendants' land.

■ In order to state adequately a cause of action for negligence, the allegations must establish the existence of a duty of care owed by the defendants to the plaintiff, a breach of that duty and an injury proximately resulting from that breach. (*Curtis v. County of Cook* (1983), 98 Ill. 2d 158; *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 440 N.E.2d 96; *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 308 N.E.2d 617.) While the questions of whether a duty has been breached and whether

the breach proximately caused an injury are factual matters (*Curtis v. County of Cook; First National Bank v. City of Aurora* (1978), 71 Ill. 2d 1, 373 N.E.2d 1326), the existence of a duty must be determined by the courts as a matter of law. *Curtis v. County of Cook; Pelham v. Griesheimer; Cunis v. Brennan; Mieher v. Brown* (1973), 54 Ill. 2d 539, 301 N.E.2d 307.

As we have noted, our consideration of the sufficiency of count II of plaintiff's amended complaint centers upon the question of duty. In *Barnes v. Washington* (1973), 56 Ill. 2d 22, 26, 305 N.E.2d 535, 538, our supreme court stated:

"Necessary to any recovery based on the theory of common law negligence is the existence of a duty or an obligation requiring one to conform to a certain standard of conduct for the protection of another against an unreasonable risk. Whether under the facts of a case such a relationship exists between two parties as to require that a legal obligation be imposed upon one for the benefit of another is a question of law to be determined by the court. (Prosser, Handbook of the Law of Torts (4th ed. 1971), sec. 37.)"

Professor Leon Green gave a lucid analysis of the duty aspect of a negligence case in an extended article that appeared in two segments in the Columbia Law Journal, *The Duty Problem in Negligence Cases*, 28 Colum. L. Rev. 1014 (1928), and 29 Colum. L. Rev. 255 (1929). Appropriate here is the following excerpt from Professor Green's article:

"In the class of cases known as 'negligence cases' a working analysis has been rather widely adopted which will serve our purposes here. Such a case has four elements: (1) the right-duty element; (2) the negligence element; (3) the damage element; and (4) the causal relation element. Ordinarily two judgment-passing agencies are employed in these cases—the judge and jury. \*\*\* This dual tribunal requires an allocation of functions. And it is generally agreed that the problems arising under the right-duty element are for the judge, while the problems of negligence, damages and causal relation, if there is an issue raised as to them by the evidence, are for the jury under instructions.

\* \* \*

Now it is clear that when the theology of a negligence case is swept aside all that is involved is that there must be a concurrence of judgment in plaintiff's favor both by judge and jury before a defendant is required to pay the loss. \*\*\* The judge passes his judgment on so-called questions of law—rights and

duties; the jury on so-called questions of fact—negligence, damage, and causal relation. The judge is the dominant factor in this arrangement. He not only passes his judgment first, but determines in what cases the jury can properly pass a judgment at all, as well as indicates some of the considerations which should be taken into account by the jury in passing judgment. ***

In passing his own judgment, the judge may frame his problems in a variety of forms: (1) Was the defendant under a duty, and if so, was he under a duty to plaintiff? or (2) Was plaintiff's interest protected against defendant's conduct? or (3) Plaintiff having invoked some general rule, was such rule designed to give protection to plaintiff's interest against such a risk as the defendant's conduct in the particular case? In another type of case it may take the form of whether defendant's conduct makes a *prima facie* case for plaintiff, or whether defendant's conduct was privileged or justifiable. But however framed, the issue is the same; the court must say whether there is any 'law' which would require defendant to bear the risk or whether plaintiff must bear his own loss." 28 Colum. L. Rev. 1014, 1022-23.

Courts in Illinois have been, and are, called upon frequently in negligence cases to determine whether a duty exists under the facts presented. Although reliable guidelines for this determination are furnished in many cases, their utilization by Illinois courts has been something less than uniform. As the supreme court said in *Mieher v. Brown* (1973), 54 Ill. 2d 539, 545, 301 N.E.2d 307, 310:

"It is apparent that the concept of duty in negligence cases is very involved, complex and indeed nebulous. The term is so ill-defined and its boundaries so indistinct that one commentator has observed: 'There is a duty if the court says there is a duty.' And he concluded that the court's pronouncement often reflects the policy and social requirements of the time and community. Prosser, Palsgraf Revisited, 52 Mich. L. Rev. 1, 15; see also Prosser, Law of Torts (4th ed. 1971) 325-26."

Probably the most quoted statement concerning the determination of duty found in Illinois cases is from *Lance v. Senior* (1967), 36 Ill. 2d 516, 224 N.E.2d 231. The plaintiff in that case was a nine-year-old boy who suffered from hemophilia. His condition was known to defendants, and the complaint alleged that while he was an overnight guest in defendants' home, the defendants negligently permitted him to play with a needle which got into plaintiff's throat and was thereaf-

ter sucked into the inner part of his lung. The supreme court held that the complaint was properly dismissed for its failure to show a duty owed by the defendants to the plaintiff. The court spoke to the basis of duty in negligence cases as follows:

"In many negligence cases no more than foreseeability is involved. And because so many actions grounded upon negligence involve familiar patterns of conduct, it is easy to forget that implicit in an allegation of negligence is the assertion of a failure to comply with the standard of care that the law requires— the assertion of a duty and its breach. (See Prosser on Torts, sec. 36; Green, Duties, Risks, Causation Doctrines, 41 Tex. L. Rev. 42, reprinted in Green, The Litigation Process in Tort Law 215; Harper & James, The Law of Torts, sec. 18.2; Gregory & Kalven, Cases and Materials on Torts 252.) ***

After the event, hindsight makes every occurrence foreseeable, but whether the law imposes a duty does not depend upon foreseeability alone. The likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing that burden upon the defendant, must also be taken into account." *Lance v. Senior* (1967), 36 Ill. 2d 516, 518, 224 N.E.2d 231, 233.

The last sentence in the foregoing quotation is to be equated with a declaration that duty in a negligence case is a matter of policy as well as foreseeability of harm so that in many cases the determination of duty is refined to: The existence of a legal duty is not dependent on the factor of foreseeability alone, but includes considerations of public policy and social requirements. *Cf. Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 367 N.E.2d 1250; *Cunis v. Brennan; Mieher v. Brown; Illinois Housing Development Authority v. Sjostrom & Sons, Inc.* (1982), 105 Ill. App. 3d 247, 433 N.E.2d 1350; *Walsh v. A. D. Conner, Inc.* (1981), 99 Ill. App. 3d 427, 425 N.E.2d 1153.

The two phrases "foreseeability of harm" and "considerations of policy" are present in some form in nearly every Illinois case that considers the duty question. Most cases use those phrases in tandem in pronouncing upon the duty issue, as in *Lance v. Senior* and the numerous cases that have used the quotation from it set forth above. However, it appears from close examination and analysis of the determination of duty in Illinois cases that "foreseeability of harm" in actuality plays little part in a resolution of the duty issue. This conclusion emerges upon consideration of the traditional role of the term "foreseeable," or "foreseeability of harm," in negligence law and

upon consideration of cases in which the duty issue is real and not nominal and cases in which there is foreseeability of harm in defendant's conduct, but yet no duty.

■ Whether a defendant should have "foreseen" harm to a party injured is the test to be used by a jury in determining negligence. "Foreseeability" enters into the negligence format only after the court has concluded that, at the time of the occurrence in question, the defendant was under a duty to guard against injury to the plaintiff. The supreme court has expressly so stated in *Mieher v. Brown* (1973), 54 Ill. 2d 539, 544-47, 301 N.E.2d 307, 309-10:

> "We do not believe, however, that the foreseeability rule applied in *Larsen* is intended to bring within the ambit of the defendant's duty every consequence which might possibly occur. In a sense, in retrospect almost nothing is entirely unforeseeable.
>
> Professor Leon Green discusses foreseeability in distinguishing between the judge's role in determining the duty owed and the jury's role in determining the violation of the duty by stating:
>
>> '[H]owever valuable the foreseeability formula may be in aiding a jury or judge to reach a decision on the negligence issue, it is altogether inadequate for use by the judge as a basis of determining the duty issue and its scope. The duty issue, being one of law, is broad in its implication; the negligence issue is confined to the particular case and has no implications for other cases. There are many factors other than foreseeability that may condition a judge's imposing or not imposing a duty in the particular case, but the only factors for the jury to consider in determining the negligence issue are expressed in the foreseeability formula.' Green, Foreseeability in Negligence Law, 61 Colum. L. Rev. 1401, 1417-18.
>
> *Thus, although foreseeability is generally accepted as the test to be applied by a jury in determining if a duty has been violated, in defining the scope of the duty, other elements must be considered by the court.*" (Emphasis added.)

It could be said that the phrase "foreseeability of harm" enters into the determination of whether a duty exists in so many cases because it has a significant sound and an easy cadence and seems to belong in the niche for determination of duty. However, the term "foreseeability of harm" is in actuality vague and uncertain; it furnishes no standards or guidelines of any sort for a court to follow in determining the existence of a duty. Because the jury determines whether a

negligent breach of duty has occurred by applying the test of foreseeability, the term "foreseeability of harm" has a factual orientation. This factual orientation renders it ineffective and unreliable for use by a court that must resolve the duty question as a matter of law. The principal utility of the phrase "foreseeability of harm" seems to be merely that of a vehicle for the pronouncement of the court's decision on the duty issue after that decision has been reached on the basis of policy considerations, the true basis of all duty decisions by Illinois courts.

Most negligence cases that come before Illinois courts conform to an established pattern and generally require little effort to resolve any duty issue presented. As noted in *Lance v. Senior*, they involve familiar patterns of conduct. In such cases a recital of the litany of duty is all that is required, like the one from *Lance v. Senior*. But when our courts are presented with a case that requires a genuine analysis of the duty issue, there has been little hesitation in playing down, or disregarding altogether, the factor of "foreseeability of harm." *Cf. Mieher v. Brown.*

The case of *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 354, 367 N.E.2d 1250, 1253, furnishes an excellent illustration. In that case the supreme court found that a doctor and a hospital that had allegedly negligently transfused plaintiff's mother with incompatible blood when she was 13 years old owed a duty to the plaintiff to take measures to prevent harm although plaintiff was not conceived for several years following the negligent transfusion. There was no previous Illinois precedent which would govern the court in its decision as it questioned whether the doctor and the hospital were under the alleged duty. The catch-phrase "foreseeability of harm" would hardly suffice as a determinant of duty because of the remoteness and unusual nature of the injury. Rather, the court considered the duty question as a matter of policy. The court noted that because the appellate court had found the risk of harm reasonably foreseeable, it assumed that duty was established. That supposition was rejected:

> "Because the appellate court found the risk of harm reasonably foreseeable, it assumed duty was established, and concluded that the delay between the act and the injury was not a bar to the action.
>
> The implication in the appellate court's opinion that duty and foreseeability are identical in scope is not altogether correct. In *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 375, it was pointed out that 'the existence of a legal duty is not to be bottomed on the factor of foreseeability alone.' There, quoted with approval, was

Dean Leon Green's observation:

> [Here the court quotes the segment of Professor Green's article we set forth above as used in *Cunis v. Brennan.*]"

Perhaps most telling of the inappropriateness of "foreseeability" in the determination of duty is the fact that there are cases in which foreseeability of harm was present, but defendant was nevertheless found to be under no duty to guard against harm to the plaintiff. *Cf. Osborne v. Sprowls* (1981), 84 Ill. 2d 390, 396, 419 N.E.2d 913, 916 ("It is true, as defendant argues, that the foreseeability of an occurrence does not *ipso facto* create a duty to take all measures necessary to prevent its occurrence"); *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 355, 367 N.E.2d 1250, 1253 ("Are there areas of foreseeable harm in which no duty arises? In some instances, the answer is clearly 'Yes' "); *Mieher v. Brown* (1973), 54 Ill. 2d 539, 545, 301 N.E.2d 307, 310 ("Although the injury complained of may have been, in a sense, foreseeable, we do not consider that the alleged defective design created an unreasonable danger or an unreasonable risk of injury"); see also *Cunis v. Brennan; Lance v. Senior; Gustafson v. Mathews* (1982), 109 Ill. App. 3d 884, 441 N.E.2d 388.

We have suggested that while our courts generally incorporate foreseeability as an element of the determination of duty, nevertheless, when it becomes necessary to inquire critically into the true basis of duty, "foreseeability of harm" does not enter into the process. Rather, the courts focus on public policy considerations. Again, the *Renslow* case furnishes an apt illustration. There, a duty was found to exist despite earlier authority to the contrary. The court based its decision on public policy considerations stemming from advances in the science of blood typing and transfusion. In basing its decision on policy, the court said:

> "Various commentators have criticized the concept of duty and have pointed out, we think correctly, that ' "duty" is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' Prosser, Torts sec. 53, at 325-26 (4th ed. 1971). See Prosser, *Palsgraf Revisited*, 52 Mich. L. Rev. 1, 15 (1953); White, *The Right of Recovery of Prenatal Injuries*, 12 La. L. Rev. 383, 401 (1952).

We are aware that two recent cases, *Jorgensen v. Meade Johnson Laboratories, Inc.* (10th Cir. 1973), 483 F.2d 237, and *Park v. Chessin* (Sup. Ct. Queens County 1976), 88 Misc. 2d 222, 387 N.Y.S.2d 204, have focused upon causation, rather than upon traditional concepts of duty, in permitting a cause of

action based on wrongful conduct prior to the plaintiff's conception. (See generally *Sylvia v. Gobeille* (1966), 101 R.I. 76, 79, 220 A.2d 222, 224; *Sinkler v. Kneale* (1960), 401 Pa. 267, 273, 164 A.2d 93, 96.) It has been aptly observed, however, that '[c]ausation cannot be the answer; in a very real sense the consequences of an act go forward to eternity, and back to the beginning of the world. Any attempt to impose responsibility on such a basis would result in infinite liability for all wrongful acts, which would "set society on edge and fill the courts with endless litigation." ' (Prosser, *Palsgraf Revisited*, 52 Mich. L. Rev. 1, 24 (1953).) Thus, policy lines, to some extent arbitrary, must be drawn to narrow any area of actionable causation. * * *

We reaffirm the utility of the concept of duty as a means by which to direct and control the course of the common law. But examples of changing notions of legal duty in the area of products liability, as well as the progressive expansion of duty in prenatal cases already documented, demonstrate that duty is not a static concept.

* * *

Logic and sound policy require a finding of legal duty in this case." (*Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 356-59, 367 N.E.2d 1250, 1254-55.)

In *Mieher v. Brown* the court concluded its discussion of the duty issue with this statement: "Public policy and social requirements do not require that a duty be placed upon the manufacturer of this truck to design his vehicle so as to prevent injuries from the extraordinary occurrences of this case." (*Mieher v. Brown* (1973), 54 Ill. 2d 539, 545, 301 N.E.2d 307, 310.) This language was adopted and quoted in *Cunis v. Brennan.*

Some discussion of the policy basis of duty is warranted. It is necessarily a nebulous and ill-defined area of the law. It is a reflection of the needs, the wishes and the tolerances of society as determined by the court as it faces the duty issue. The court's perceptions of duty in negligence cases will change as society changes. The true essence of the process of determining duty is revealed in the fact that different judges, different courts, can justifiably reach different conclusions on the existence of a duty from a consideration of the same set of facts.

The policy basis of duty has been discussed by legal scholars at some length. Although speaking of the development of law in a broader sense, and not merely of negligence actions, Oliver Wendell Holmes cogently described policy as the basis for the determination of duty in negligence cases:

"[I]n substance the growth of the law is legislative. And this in a deeper sense than that what the courts declare to have always been the law is in fact new. It is legislative in its grounds. The very considerations which judges most rarely mention, and always with an apology, are the secret root from which the law draws all the juices of life. I mean, of course, considerations of what is expedient for the community concerned. Every important principle which is developed by litigation is in fact and at bottom the result of more or less definitely understood views of public policy; most generally, to be sure, under our practice and traditions, the unconscious result of instinctive preferences and inarticulate convictions, but none the less traceable to views of public policy in the last analysis." O. Holmes, The Common Law 35-36 (1881).

Speaking to the specific situation that concerns us, Professor Leon Green in *The Duty Problem in Negligence Cases*, 28 Colum. L. Rev. 1014, 1034-35 (1928), suggests the following as the factors that underlie the policy determinants of duty:

"The following are believed to be the factors of most significance in influencing the determination of duties and through them the limits of the protection afforded by law. There are doubtless others:

1. The administrative factor.
2. The ethical or moral factor.
3. The economic factor.
4. The prophylactic factor.
5. The justice factor.

Each of these must be satisfied somewhat in every acceptable decision. No judgment can long prove acceptable which develops very great pressure at any one of these points. No one can be overstressed, though now one and then the other will seem to be dominant. If a human desire or interest cannot be given protection without offending one or more of what might be called the 'social senses' corresponding to these several factors, then it must go without protection; there is no duty to respect it. These 'senses' as developed in judges and through the judicial process are therefore of the greatest importance. Their influence can be demonstrated in hundreds of cases."

In much the same vein is the statement of Professor Prosser regarding the policy foundation of duty:

" '[D]uty' is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the

law to say that the particular plaintiff is entitled to protection.
\* \* \*

[T]he courts have merely 'reacted to the situation in the way in which the great mass of mankind customarily react,' and that as our ideas of human relations change the law as to duties has changed with them. Various factors undoubtedly have been given conscious or unconscious weight, including convenience of administration, capacity of the parties to bear the loss, a policy of preventing future injuries, the moral blame attached to the wrongdoer, and many others. Changing social conditions lead constantly to the recognition of new duties. No better general statement can be made, than that the courts will find a duty where, in general, reasonable men would recognize it and agree that it exists." Prosser, Torts sec. 54, at 326-27 (4th ed. 1971).

■ With the foregoing analysis as our guide, we turn to the consideration of the singular issue of the instant case: Did defendants owe a duty to plaintiff to take measures to protect him from the injury he received as a result of the described occurrence? It cannot be seriously questioned that plaintiff's injury was a foreseeable consequence of the backing of a car by a patron of defendants' tavern from their parking lot onto the highway. Any jury could reasonably so conclude. Experience has taught us that any time a car is backed from adjoining land onto a busy street or highway during the nighttime, a collision with oncoming traffic can be an expected consequence. But is the owner of the adjacent land from which the car driver backs onto the highway under a duty to protect travelers on the highway from injury which results from a collision that occurs entirely within the confines of the highway? The answer must be no. The trial court so held and we affirm. This is especially true where, as here, the collision did not occur upon the defendants' land and no condition of the land, no structure of any kind upon the land, and no activity conducted upon the land is alleged to have been a contributing cause of the collision. There was nothing on defendants' land that interfered with the patron's view of oncoming traffic upon the highway. Although the parking lot from which the patron backed was a narrow one, there is nothing about the mere size of the lot that should impel the court to impose a duty upon defendants. The patron could have been parked on a large lot, backed his car to a point near the highway, stopped, and then proceeded into the highway and the collision. Thus, we regard the size of the lot as of no consequence in this case.

It is worthy of consideration that the patron of defendants' tavern had not parked his car in violation of section 11—1303 of the Illinois

Vehicle Code (Ill. Rev. Stat. 1977, ch. 95½, par. 11—1303). Additionally, the patron's backing maneuver was, absent the collision, not in violation of the backing statute (Ill. Rev. Stat. 1977, ch. 95½, par. 11—1402).

Here, defendants are charged with nothing but utilizing a parking lot that lies in close proximity to a highway. Plaintiff furnishes no case or other authority that has imposed a duty upon landowners to take measures to protect persons using a public street or highway adjacent to a parking lot from injury from persons backing from the parking lot into the street or highway. Our own research has not disclosed any such authority. We find no reasons founded in policy which would require that such duty be imposed. In fact, it is our perception that policy would dictate to the contrary. Any other result would cast an unreasonable burden upon owners of property containing parking lots or driveways adjacent to public streets and highways.

Under the circumstances shown by this case, society has cast the burden of due care solely upon the drivers of the vehicles involved. Defendant has cited an Oklahoma case that is close on its facts to this one, *Safeway Stores, Inc. v. Musfelt* (Okla. 1960), 349 P.2d 756. The Oklahoma court said it very well:

"It is a matter of common knowledge that most residences and many business establishments have driveways leading from the streets across sidewalks onto their premises where cars are parked, and that such vehicles must be backed up (or out) in order to leave the premises. Under these circumstances the property owner is not liable because the owner cannot control and has no right to control the drivers of the vehicles. However, the property owner has a right to expect the drivers of cars to look before they back out ***." *Safeway Stores, Inc. v. Musfelt* (Okla. 1960), 349 P.2d 756, 758.

Plaintiff has cited *Kubala v. Dudlow* (1958), 17 Ill. App. 2d 463, 150 N.E.2d 643, and other cases of similar nature. The *Kubala* case, and the others cited, involved accidents caused by structures on land adjacent to a highway or materials that were permitted to escape from land and cause accidents on adjacent highways. Such cases present no authority for plaintiff's argument here.

Affirmed.

KARNS,J., concurs.

JUSTICE HARRISON, dissenting:

I agree with the majority opinion insofar as it recognizes that duty and foreseeability are not synonymous, and that the inquiry into the existence of a duty in a given factual situation is one for the judge, and not the jury, to make. I cannot accept, however, the majority's unwillingness to recognize the relevance of foreseeability regarding the duty question. Such unwillingness is contrary to law and, in my view, produces an erroneous result in the instant case.

As noted by the majority, the existence of a legal duty "is not to be bottomed on the factor of foreseeability alone." (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 375, 308 N.E.2d 617.) It does not follow, however, that considerations of foreseeability are not germane to the duty question, and the majority's conclusion that foreseeability of harm "does not enter into the process" of the duty inquiry is simply incorrect. Rather, foreseeability is one factor to be considered, along with "[t]he likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing that burden upon the defendant." (*Lance v. Senior* (1967), 36 Ill. 2d 516, 518, 224 N.E.2d 231.) While the weight accorded to each of these factors may vary in different factual settings, I believe that the nature of duty itself, as that term has developed in our jurisprudence, necessarily incorporates some consideration of the foreseeability element. A duty is an obligation imposed by the law upon a person which requires the person to conform to a certain standard of conduct for the protection of another against an unreasonable risk. (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 554, 328 N.E.2d 538.) In assessing whether to impose that obligation on a defendant, it seems to me that we must determine whether the events alleged in the complaint are among those which the defendant might reasonably have anticipated would occur. Upon making that determination, we are required to apply to the pleaded facts the remaining tests articulated by our supreme court: the likelihood of injury, the magnitude of the burden of guarding against that injury, and the consequences of placing that burden on the defendant. While each of these determinations must then be weighed and considered in making the final decision as to whether a duty exists, the importance of the foreseeability factor cannot be ignored. However great the likelihood of injury or however small the burden on a defendant to prevent it, a defendant could not properly be found to owe a duty to guard against an accident or event which neither the defendant nor anyone else could possibly have foreseen. Conversely, a defendant may well owe a duty in a situation where the event leading to litigation is readily foreseeable, even though the burden of guarding against injury is relatively great. In any situation, consideration of

foreseeability is not only important; it is, as observed by a former justice of our supreme court, "the touchstone of the quality of an act as negligence, the most important test in determining duty" (*Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 364, 367 N.E.2d 1250 (Dooley, J., concurring)).

Finally, I believe that proper application of these tests of duty to the facts of this case compels the conclusion that plaintiff's complaint states a cause of action. As conceded by the majority, it is readily foreseeable that those backing from defendants' tavern into the highway may be involved in accidents. The likelihood of injury from such collisions is undeniably great, and it is a matter of equally common knowledge that injuries resulting from an automobile crash may be of severe magnitude. The burden of guarding against the injury is not great, as a simple warning sign or alteration of the manner in which customers' vehicles are allowed to be parked could avoid the problem. The fact that the injury did not occur on defendants' land is not, in my view, significant, given the public nature of defendants' business, the location of the parking lot near the curve on the highway, the occurrence of previous accidents at the location in question, and the obvious foreseeability of the accident here. It has been said that "[e]very person owes to all others a duty to exercise ordinary care to guard against injury which may naturally flow as a reasonably probable and foreseeable consequence of his act" (*Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 622, 126 N.E.2d 836), and I cannot accept the conclusion that such duty does not extend to these defendants under the facts pleaded here.