EDWIN TURNER, Plaintiff-Appellant, v. RUSH MEDICAL COLLEGE *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—87—2319

Opinion filed March 31, 1989.

PINCHAM, J., dissenting.

Doyle & Ryan, Ltd., of Chicago (James M. Harman, of counsel), for appellant.

George F. Galland, Jr., of Davis, Barnhill & Galland, of Chicago, for appellees.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiff appealed from the dismissal of his cause of action under section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch.

110, par. 2—615) for failure to state a cause of action. We address the issue of whether the allegations of plaintiff's amended complaint are legally sufficient to establish that defendants owed plaintiff a duty of care. For the following reasons, we affirm.

Plaintiff's amended complaint for negligence against defendants alleged the following facts. Plaintiff, a 23-year-old second-year medical student at Rush Medical College (Rush), was enrolled in a clinical pathology class taught by Meryl H. Haber. Haber was a medical doctor employed as a professor by Rush, a certified medical school. On May 2, 1985, Haber "directed" plaintiff to run one mile within eight minutes as a "laboratory experiment" for the class. Prior to and after the run, plaintiff was to take a urine sample and then record any changes in the electrolyte levels of the samples. The experiment was not a formal requirement to obtain a medical degree. Prior to the experiment, plaintiff had not been involved in regular physical exercise since he was in high school, had never run a timed-mile run, and was not in physical condition to participate in a timed-mile run.

Plaintiff alleged defendants had a duty to exercise reasonable care for his safety which was breached when defendants required him to run the mile but did not learn what forms of physical exercise he was involved in, did not learn whether he ever participated in a timed-mile run, did not conduct a physical examination of him to check respiration and blood pressure, did not have medical personnel present during and after the run, did not have oxygen and water available during and after the run, and did not properly supervise him during the run.

Plaintiff alleged as a direct and proximate result of defendants' breach of duty he suffered a "total collapse in his body mechanisms" which involved numerous medical problems, including "extreme exertional rhabdomyolysis," requiring hospitalization for 2½ months at a cost of over $250,000.

Defendants moved to dismiss the amended complaint pursuant to section 2—615 and argued, among other issues, that plaintiff did not plead sufficient facts to establish defendants owed a legal duty to take the precautions plaintiff alleged were required.

The trial court dismissed plaintiff's cause of action with prejudice finding that the allegations did not give rise to a duty on defendants' part. Plaintiff filed a timely notice of appeal.

OPINION

In reviewing the dismissal of an action under section 2—615, the court must interpret the allegations of the complaint in a light most favorable to the plaintiff, and if it appears that no set of

facts from the pleadings could be proven which would entitle plaintiff to relief, the dismissal must be affirmed. (*Ross v. City of Chicago* (1988), 168 Ill. App. 3d 83, 522 N.E.2d 215.) A legally sufficient complaint for negligence must plead facts that establish the existence of a duty owed by defendant to plaintiff, breach of the duty, and an injury proximately caused by the breach. (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 513 N.E.2d 387.) Whether defendant and plaintiff stood in such a relationship to one another that the law imposed a duty of reasonable conduct on defendant toward plaintiff is a question of law for the court to determine. *Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 520 N.E.2d 37.

In analyzing whether defendants owed plaintiff a duty in this case, we are guided by the following pronouncement by the Illinois Supreme Court:

> "[I]n determining whether there was a legal duty, the occurrence involved must not have been simply foreseeable, \*\*\* it must have been reasonably foreseeable. The creation of a legal duty requires more than a mere possibility of occurrence. \*\*\* 'No man can be expected to guard against harm from events which are not reasonably to be anticipated at all, or are so unlikely to occur that the risk, although recognizable, would commonly be disregarded.'" (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 375-76, 308 N.E.2d 617, 619, quoting W. Prosser, Torts §31, at 146 (4th ed. 1971).)

Additionally, reasonable foreseeability must be judged as what the reasonably prudent person would have foreseen as likely to happen at the time of defendants' conduct, not what may appear with hindsight. *Cunis*, 56 Ill. 2d at 376, 308 N.E.2d at 619.

■ In the present case, we must consider what would have been apparent to a reasonably prudent person at the time defendants required plaintiff to run a mile. In his complaint, plaintiff did not allege that defendants knew or should have known he was not in physical condition to run, he was not involved in regular physical exercise, or he would suffer an injury. Also, plaintiff did not allege that defendants knew or should have known of a medical condition which would make him more likely to suffer an injury from physical exertion. From the allegations of plaintiff's complaint, there is nothing to indicate that defendants saw plaintiff as anything other than a healthy 23-year-old man. Additionally, there are no allegations that the surrounding conditions, such as heat or humidity of the day, would suggest a need for caution. We believe that at the time of defendants' conduct,

a reasonably prudent person would not have foreseen plaintiff's injury.

■ Although reasonable foreseeability of harm is the primary concern in determining whether a duty exists, the court must also consider the likelihood of injury, the magnitude of the burden to guard against the injury, and the consequence of placing the burden on defendant. (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 513 N.E.2d 387.) The determination of whether a duty exists reflects public policy and social requirements. *Zimmermann v. Netemeyer* (1984), 122 Ill. App. 3d 1042, 462 N.E.2d 502.

■ The trial court relied, in part, on public policy considerations when it determined that the allegations of plaintiff's complaint did not give rise to a duty on defendants' part. Plaintiff urges that this court find the existence of a duty and not be concerned with the application of this case to future cases. Plaintiff ignores that the determination of whether a legal duty exists is dependent, in part, on public policy, and we are unable to confine our analysis in the manner plaintiff suggests. If we were to hold that a duty exists under the facts alleged in plaintiff's complaint, we can foresee countless situations where our holding could potentially be applicable. Almost any physical activity that a school or teacher required could trigger a duty to provide medical precautions. The imposition of a duty in such cases would impose an expensive financial burden on schools which we believe would violate public policy.

For the foregoing reasons, the judgment of the trial court in dismissing plaintiff's cause of action for negligence is affirmed.

Judgment affirmed.

MURRAY, P.J., concurs.

JUSTICE PINCHAM, dissenting:
I dissent. Unlike the majority, I do not "believe that at the time of defendants' conduct, a reasonably prudent person would not have foreseen plaintiff's injury." (182 Ill. App. 3d at 451-52.) Nor do I agree with the majority's affirmance of the trial court's dismissal of plaintiff's complaint on the majority's stated public policy ground. I am of the opinion that plaintiff's first amended complaint alleged a cause of action against defendants and that the trial court erred in dismissing it. Reversal is therefore required.

The allegations of the plaintiff's first amended complaint, the complaint, present facts on which reasonable men might differ on

whether defendants owed plaintiff a duty. The trial court therefore erred in granting the defendants' motion to dismiss plaintiff's complaint.

Plaintiff's complaint alleged as follows:

"1. On May 2, 1985, the defendant, RUSH MEDICAL COLLEGE, was a certified medical school providing a curriculum in medicine and as such, had in its employ various individuals who would teach medical students the required course of curriculum leading to a medical degree.

2. On May 2, 1985, the defendant, MERYL H. HABER, was a medical doctor employed by the defendant, RUSH MEDICAL COLLEGE, as a professor of clinical pathology who taught medical students said course at the RUSH MEDICAL COLLEGE.

3. At all times mentioned here, the defendant, MERYL H. HABER, was acting as the agent, servant or employee of the defendant, RUSH MEDICAL COLLEGE.

4. On May 2, 1985, the plaintiff, EDWIN TURNER, was twenty-three years of age and was a second year medical student at RUSH MEDICAL COLLEGE and at said time was a student in the course of clinical pathology and had as his teacher, the defendant, MERYL H. HABER.

5. On May 2, 1985, the plaintiff, EDWIN TURNER, was directed by the defendant, MERYL H. HABER, to participate in a timed mile run within eight minutes as a laboratory experiment in the course in clinical pathology in that the defendant, MERYL H. HABER, was going to have the plaintiff take a urine sample after the timed mile run in order to record the changes in various electrolyte levels in the urine.

6. That at no time prior to the timed mile run did the defendants inquire as to the physical condition of the plaintiff or inquire into what forms of exercise he practiced or conduct any physical examination of the plaintiff.

7. That the plaintiff, EDWIN TURNER, as a twenty-three year old, second year medical student, was not involved in any regular physical exercise and had not performed any exercises since being a high school student and furthermore, had never participated in a mile run, and as such, was not in any physical condition to participate in a timed mile run.

8. That the timed mile run required by DR. MERYL H. HABER was not part of any State of Illinois requirement for the degree of medical doctor nor was it a formal requirement

of the RUSH MEDICAL COLLEGE course of curriculum leading to a medical degree.

9. That the defendants, RUSH MEDICAL COLLEGE and MERYL H. HABER, while having the plaintiff under their supervision and control and while directing him to participate in a timed mile run as part of a laboratory experiment had a duty to exercise reasonable care for the safety of the plaintiff.

10. That notwithstanding said duty the defendants, RUSH MEDICAL COLLEGE and MERYL H. HABER, were then and there guilty of one or more of the following negligent acts or omissions:

a) Required the plaintiff to participate in an experiment by virtue of running in a timed mile run without learning what forms of physical exercise the plaintiff did and specifically, whether the plaintiff had ever run in a timed mile run;

b) Required the plaintiff to participate in an experiment by virtue of running a timed mile run without conducting a physical examination of the plaintiff to check on his respiration and blood pressure;

c) Required the plaintiff to participate in an experiment by running in a timed mile run without having medical personnel present to assist the plaintiff during and after the timed mile run;

d) Required the plaintiff to participate in an experiment by virtue of running in a timed mile without providing for oxygen being available to the plaintiff if he needed the same during and after the timed mile run;

e) Required the plaintiff to participate in an experiment by running in a timed mile run without providing for water to be available to the plaintiff if needed during and after the timed mile run;

f) Required the plaintiff to participate in an experiment by running in a timed mile run without properly supervising the plaintiff by failing to provide the foregoing;

11. That as a direct and proximate result of the defendants, directing the plaintiff to participate in an experiment by running in a timed mile run without doing the foregoing the plaintiff did become dehydrated and due to the lack of oxygen go into respiratory distress and due to delay in medical treatment did suffer a total collapse in his body mechanisms resulting in serious and permanent injuries including extreme exertional rhabdomyolysis, profound lactic acidosis, disseminated intravas-

cular coagulation, acute tubular necrosis requiring dialysis, enterobacter peritonitis, right partial cerebral hemorrhage, diffuse gastrointestinal hemorrhage, adult respiratory distress syndrome with intubation, ventricular tachycardia with prolonged sinus tachycardia, prolonged sinus pause requiring pacemaker, profound hypocalcemia with mild rebound hypercalcemia and bilateral calf compartment syndrome with residual nerve palsy resulting in hospitalization from May 2, 1985 through July 21, 1985 and incurring medical bills in excess of Two Hundred and Fifty Thousand ($250,000.00) Dollars and he was thereby injured internally, externally and otherwise, both temporarily and permanently ***."

The trial court granted the defendants' motion to dismiss plaintiff's complaint pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615) and dismissed plaintiff's complaint on the ground that the complaint did not allege facts which established that the defendants owed plaintiff a duty. The trial court ruled that a lack of foreseeability of harm and policy considerations required dismissal of plaintiff's complaint as a matter of law. Plaintiff urges on this appeal that his complaint adequately alleged that defendants owed him a duty, that the complaint stated a cause of action against defendants, and that the trial court therefore erred in dismissing his complaint.

In ruling on defendants' motion to dismiss plaintiff's complaint for failure to state a cause of action and in reviewing the trial court's dismissal order on that ground, all reasonable inferences from the pleadings must be drawn in plaintiff's favor. (*Cook v. Askew* (1975), 34 Ill. App. 3d 1055, 341 N.E.2d 13.) Moreover, on a motion to dismiss a complaint on insufficiency grounds, all facts properly pleaded must be taken as true. (*Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179.) Negligence, due care and proximate cause are generally issues of fact for the jury's determination. (*Thomas v. Northington* (1985), 134 Ill. App. 3d 141, 479 N.E.2d 988; *Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74.) Negligence, due care and proximate cause become questions of law only when "there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them." (*Thomas v. Northington* (1985), 134 Ill. App. 3d 141, 146-47.) Questions on which reasonable men may arrive at different results should not be determined as a matter of law, but, rather, should remain within the jury's province for determination. *Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74.

The myriad of cases which decide whether a defendant owed

plaintiff a duty agree that a determination of the existence of such a duty must be made on a case-by-case basis. *Johnson v. Village of Libertyville* (1986), 146 Ill. App. 3d 834; *Dunkin v. Rzonca* (1985), 133 Ill. App. 3d 184, 478 N.E.2d 603; *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13; *Nelson v. Commonwealth Edison Co.* (1984), 124 Ill. App. 3d 655, 465 N.E.2d 513; *Davis v. Weiskoph* (1982), 108 Ill. App. 3d 505, 439 N.E.2d 60; *Curtis v. County of Cook* (1983), 98 Ill. 2d 158.

In the instant complaint plaintiff alleged that the defendants owed a duty to plaintiff to exercise reasonable care for plaintiff's safety while plaintiff was under the defendants' supervision and control. The complaint alleged that plaintiff was a second-year medical student at the defendant medical school and that as such, defendants required plaintiff to run an eight-minute mile laboratory experiment for defendants' clinical pathology course. Plaintiff alleged that defendants sought and obtained no information regarding plaintiff's physical ability to run an eight-minute mile or the detrimental physical impact running an eight-minute mile would have on plaintiff. Plaintiff asserted that had defendants properly sought and obtained such information of plaintiff's physical condition, defendants would have learned that plaintiff was not in the physical condition to participate in an eight-minute mile run and that to require plaintiff to do so would have serious detrimental physical repercussions on plaintiff and that in fact it did have such effects. Nevertheless, plaintiff contended, the defendants required plaintiff to participate in the eight-minute mile run laboratory experiment without providing medical personnel to assist plaintiff or to render medical aid to plaintiff should the need therefor occur during or after the run, and without providing oxygen or water to plaintiff during and after the run, which caused plaintiff to become dehydrated and relapse into respiratory distress, resulting in plaintiff's hospitalization for over 2½ months, at a cost aggregating over a quarter of a million dollars. Plaintiff contended that these foregoing factual allegations showed that defendants owed plaintiff a duty to exercise reasonable care for plaintiff's safety and that defendants violated said duty.

*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 375-76, sets forth the criteria for a judicial determination of the existence of a duty, as follows:

"[I]n determining whether there was a legal duty, the occurrence involved must not have been simply foreseeable *** *it must have been reasonably foreseeable.* The creation of a legal duty requires more than a mere possibility of occurrence. *** 'No man can be expected to guard against harm from events which are not reasonably to be anticipated at all, or are so un-

likely to occur that the risk, although recognizable, would commonly be disregarded.' " (Emphasis added.)

Regarding the "reasonably foreseeable" criteria, it is practically a matter of common knowledge that running an eight-minute mile may cause injury, particularly under hot and humid weather conditions, over an unfavorable terrain and when the runner is not in good physical condition. An injury from such an undertaking is certainly "reasonably foreseeable." At the very least, it is clear from the facts alleged by plaintiff that reasonable men may differ on whether a student's running an eight-minute mile could or might be injurious to the student was reasonably foreseeable. A court cannot unequivocally and validly conclude, as a matter of law, as does the majority, "that at the time of defendants' conduct [requiring plaintiff to run a eight-minute mile], a reasonably prudent person would not have foreseen plaintiff's injury." (182 Ill. App. 3d at 451-52.) Quite the contrary! But again, at the very least, reasonable men may differ on whether "a reasonably prudent person would not have foreseen plaintiff's injury." Although reasonable men may or may not differ on a reasonably prudent person's foreseeability of the extent or the degree of the injury, reasonable men certainly may differ on whether any injury was foreseeable. The allegations of plaintiff's complaint, when viewed favorably to the plaintiff and with all reasonable inferences which necessarily follow therefrom, present facts on which reasonable men might differ, and by reason thereof, the duty issue in the case was properly within the fact-finding function of the jury. (*Thomas v. Northington* (1985), 134 Ill. App. 3d 141, 479 N.E.2d 988; *Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74.) The majority's conclusion, that there could be no difference in the judgment of reasonable men on the facts alleged in plaintiff's complaint that the injury was not reasonably foreseeable, is clearly an erroneous conclusion.

The majority admits that the allegations of plaintiff's complaint must be interpreted in a light most favorable to the plaintiff. The majority additionally admits that only "if it appears that no set of facts from the pleadings could be proven which would entitle plaintiff to relief, the dismissal must be affirmed." (182 Ill. App. 3d at 450-51.) Yet, the majority thereafter strongly suggests that there were facts, which if alleged, and could have been alleged, would have entitled plaintiff to relief, when the majority states that plaintiff's complaint did not allege that (1) "defendants knew or should have known plaintiff was not in physical condition to run"; (2) plaintiff "was involved in regular physical exercise"; (3) plaintiff "would suffer an injury"; (4) "of a medical condition which would make him more likely to suffer an in-

jury from physical exertion"; and (5) "the surrounding conditions, such as heat or humidity of the day, would suggest a need for caution." (182 Ill. App. 3d at 451.) A reading of the allegations of plaintiff's complaint, in a light most favorable to plaintiff, with all the reasonable inferences to be drawn therefrom, establishes that plaintiff's complaint adequately alleged and/or reasonably inferred the foregoing purported deficiencies on which the majority relies. If it did not, plaintiff should have been given further opportunity to have so alleged. It certainly does not appear from plaintiff's complaint that no facts could be alleged or proven which would entitle plaintiff to relief. The trial court therefore erred in dismissing plaintiff's complaint.

The trial court in dismissing plaintiff's complaint, and the majority in affirming the trial court's dismissal, have imposed their own judgment when reasonable minds may well differ on plaintiff's pleaded facts. This unwarranted judicial usurpation was adversely commented upon in *Morrison v. Forest Preserve District* (1987), 155 Ill. App. 3d 687, 690, 508 N.E.2d 312, 314, as follows:

"Once again, the majority has usurped the fact-finding function normally left to the jury and has instead determined that this is the proper instance in which to 'toughen the public's psyche.'"

It is logically unimaginable that where a 23-year-old medical student is required by his medical school professors to run an eight-minute mile as a part of a class experiment in clinical pathology, that reasonable minds could not differ on whether an injury from such a run could be reasonably foreseen, thus requiring a duty by the professors to exercise reasonable care for the safety of the student in running the eight-minute mile. The trial court erred in dismissing plaintiff's complaint on the ground that it did not allege a duty owed plaintiff by defendants.

The trial court granted defendants' motion to dismiss not only on the erroneous ground that plaintiff's injuries were not reasonably foreseeable, but also on the likewise erroneous ground that public policy considerations required dismissal of plaintiff's complaint. The majority mistakenly affirms on this ground as well.

The court discussed the policy basis of a duty in *Zimmermann v. Netemeyer* (1984), 122 Ill. App. 3d 1042, 1047, 462 N.E.2d 502, in which plaintiff was injured when a car backed out of defendant's tavern parking lot onto the highway and struck the automobile in which plaintiff was a passenger. The court stated that "duty in a negligence case is a matter of policy as well as foreseeability of harm so that in many cases the determination of duty is refined to: The existence of a

legal duty is not dependent on the factor of foreseeability alone, but includes consideration of public policy and social requirements." (122 Ill. App. 3d at 1047, 462 N.E.2d at 502.) The *Zimmermann* court stated that the policy basis of duty is "necessarily a nebulous and ill-defined area of the law. It is a reflection of the needs, the wishes and the tolerance of society as determined by the court as it faces the duty issue," and:

> "Professor Leon Green in *The Duty Problem in Negligence Cases*, 28 Colum. L. Rev. 1014, 1034-35 (1928), suggests the following as the factors that underlie the policy determinants of duty:
>
>> 'The following are believed to be the factors of most significance in influencing the determination of duties and through them the limits of the protection afforded by law. There are doubtless others:
>>
>> 1. The administrative factor.
>> 2. The ethical or moral factor.
>> 3. The economic factor.
>> 4. The prophylactic factor.
>> 5. The justice factor.
>>
>> Each of these must be satisfied somewhat in every acceptable decision. No judgment can long prove acceptable which develops very great pressure at any one of these points. No one can be overstressed, though now one and then the other will seem to be dominant.' " *Zimmermann,* 122 Ill. App. 3d at 1052.

The majority in the case at bar concludes, which I do not agree are or should be controlling, that "If we were to hold that a duty exists under the facts alleged in plaintiff's complaint, we can foresee countless situations where our holding could potentially be applicable. Almost any physical activity that a school or teacher required could trigger a duty to provide medical precautions. The imposition of a duty in such cases would impose an expensive financial burden on schools which we believe would violate public policy." 182 Ill. App. 3d at 452.

Plaintiff's complaint alleged a specific set of facts which cannot be construed into something they are not. Plaintiff's theory and cause of action are confined to the facts plaintiff alleged. What the trial court and the majority ignore is that the defendants used plaintiff in the eight-minute mile run as an experiment in a clinical pathology class. Plaintiff's complaint does not involve a student engaged in an exercise program, physical education class, or intramural or interscholastic

athletics events. Instead, plaintiff's complaint is confined to plaintiff being used in a medical school class experiment at the direction of the defendant, plaintiff's teacher. Under these facts defendants should have a duty to bear the cost of taking the necessary precautions to prevent plaintiff's injury and to properly suffer the consequences for failure to have done so. A duty of reasonable care under the specific facts pleaded in plaintiff's complaint imposes no undesired or undue social administrative, ethical, moral or economic factor or burden on defendants or on society.

There is nothing unique, new or unusual in the requirement that teachers, schools, and school personnel exercise reasonable care to students under their control and direction. Particularly, schools and faculties have a duty to exercise reasonable care in supervising track and field events (*Marques v. Riverside Military Academy* (1952), 87 Ga. 370, 73 S.E.2d 574), and a duty to provide medical care when needed (*Howe v. Board of Education* (1971), 312 N.Y.S.2d 508; *Mogabgab v. Orleans Parish School Board* (La. App. 1970), 239 So. 456). Schools have a duty to furnish proper equipment to prevent student injuries. *Lynch v. Board of Education* (1980), 82 Ill. 2d 415; *Gerrity v. Beatty* (1978), 71 Ill. 2d 47.

In *Lynch*, following *Gerrity*, the supreme court concluded that ordinary negligence was the criterion in determining that the school district was negligent in failing to provide proper football gear, a helmet, to the injured student. In rejecting the school district's claim of nonliability, the court held:

> "[T]he inquiry need only be whether the jury was justified in finding the defendant school district negligent in failing to provide effective equipment to the student. The defendant argues that it cannot be liable, because the game was not authorized, and because it did not furnish any equipment, so it could not have furnished defective equipment. We have previously decided that the teachers were acting with apparent authority; thus, whether the game was authorized is not material. We also do not think that, because the defendant did not furnish any equipment to the students, it is absolved from liability for failing to provide effective equipment. Instead, *we think a school district has an affirmative duty, where students are engaging in school activities, where they are extracurricular, or formally authorized as part of the school program, to furnish equipment to prevent serious injuries*. At the least, a school district should furnish helmets and face guards for a game such as football, where head injuries are common and severe. Ac-

cordingly, we think the instant school district was negligent for failing to provide, at the least, helmets and face guards to the students. It is reasonably clear that the manifest weight of the evidence established negligence on the part of the defendant because it did not furnish any protective head gear or face gear to the students although *it knew or should have known through its agents that an injury was foreseeable.* Moreover, the failure to provide such equipment was a proximate cause of the plaintiff's injury." (Emphasis added.) 82 Ill. 2d at 434-35.

In the case at bar, plaintiff's complaint alleged that the defendants negligently failed to properly provide plaintiff oxygen, water and medical assistance, all of which were required under *Lynch.*

For the foregoing reasons, it is my opinion that the trial court erred in dismissing plaintiff's complaint on the ground that it failed to allege facts which imposed a duty on defendants and because of public policy. The trial court's dismissal order should be reversed. Accordingly, I dissent.