JIMMY LOOSIER, a Minor, by Joyce Loosier, his Mother and Next Friend, Plaintiff-Appellant, v. YOUTH BASEBALL AND SOFTBALL, INC., Defendant-Appellee.

Fifth District   No. 5—84—0640

Opinion filed April 11, 1986.

HARRISON, J., specially concurring.

Carroll L. Owens, of Benton, for appellant.

Feirich, Schoen, Mager, Green & Associates, of Carbondale, for appellee.

PRESIDING JUSTICE KASSERMAN delivered the opinion of the court:

This cause of action arose out of personal injuries suffered by the minor plaintiff when he was struck by a truck while trying to cross Interstate Route 57 west of Benton. Plaintiff filed suit alleging that

defendant was negligent in that it was guilty of a breach of a duty owed the plaintiff to supervise, watch over, and care for the plaintiff while the plaintiff was selling baseball raffle tickets.

The defendant, Youth Baseball and Softball, Inc., is a not-for-profit organization which raises funds through raffle ticket sales. Each year prizes are given to the baseball participants who sell the most raffle tickets. The minor plaintiff, Jimmy Loosier, was a member of a baseball team which was under the supervision of the defendant's summer baseball program. Members of the baseball team participated voluntarily with their parents' permission in the sale of raffle tickets to give away a new automobile as a means of financing the costs of the baseball program.

The raffle tickets were issued to the coaches who then issued tickets to the players to be sold by them. The tickets were initially distributed in lots of 10 to each child by the team coach. After the children sold their initial 10 tickets, they could get more tickets only with their parents' permission. After the initial 10 tickets were issued to a child, Youth Baseball did not issue any more tickets to the children but, rather, gave them to the children's parents when their parents asked for additional tickets. Selling the raffle tickets was purely the voluntary decision of each child and his parents. If a child did not participate in the fund-raising activities, the child lost no privileges.

Youth Baseball warned the children, upon distributing the initial 10 raffle tickets to each child who participated, not to sell them by themselves and not to go out without their parents' permission. Although some individual coaches took their baseball players out to sell tickets periodically, it was understood that the overall duty of supervision lay with the child's parents and not with Youth Baseball.

The plaintiff, Jimmy Loosier, was 11 years old at the time of his injury on July 22, 1982. He had been selling raffle tickets for the youth Baseball program for four years when the accident occurred. When Loosier first began selling raffle tickets his mother warned him about places he should not go, people he should not sell to, and streets and highways he should avoid. She had instructed him to stop, look and listen when crossing streets. The minor plaintiff had also been instructed in safety on highway crossing at school.

On July 22, 1982, plaintiff went to the Wal-Mart store, which was approximately two miles from his home and across Interstate Route 57, west of Benton. Prior to the accident, Jimmy Loosier had gone to the shopping mall where the Wal-Mart store is located on his own or with his friends 10 to 20 times in order to sell raffle tickets or just to "goof off." The majority of the times the plaintiff had gone to Wal-

Mart to sell tickets, he had gone without adult supervision. Jimmy's mother knew when he went out to the mall by himself or with his friends and that there was no adult with them.

On the particular day the plaintiff was injured while crossing Interstate Route 57, he informed his mother he was going to Wal-Mart to sell raffle tickets. However another reason plaintiff wanted to go to Wal-Mart that day was to simply "get out of the house" because he was bored. Mrs. Loosier saw that Jimmy had his little black bag with the tickets when he left the house. She knew that Youth Baseball was not providing people to accompany her son whenever he went to sell tickets; yet, she permitted him to sell the tickets anyway.

After arriving at the mall the plaintiff sold seven or eight tickets. Then Johnny Hines and some other kids asked Loosier to steal a "hot wheels car" from Wal-Mart. When Loosier refused, they said they were going to "beat the heck out" of plaintiff if he didn't. Loosier then left Wal-Mart. While he was standing out in the parking lot, Loosier saw the other kids coming outside so he began running. As he was running, he could see Hines and the other children following him on bikes. Loosier ran toward Interstate 57 and made it safely across the southbound lanes of the interstate. When he was in the middle of the northbound portion of the interstate, he saw a semi-truck approaching. He slid and then started to scoot back up and the truck ran over his leg.

The plaintiff alleges that Youth Baseball owed a duty of supervision to him at the time and occasion of his injury. The trial court granted defendant's motion for summary judgment, finding that Youth Baseball owed no duty to Loosier under the circumstances because the injuries to Loosier did not arise out of a time in which raffle tickets were being sold due to the fact that the sale of tickets had effectively been terminated prior to the activity which led to the plaintiff's injuries. Plaintiff appealed from that portion of the trial court's order. The trial court further held that the complaint stated a cause of action in that Youth Baseball had a duty to provide supervision for raffle ticket sales. Youth Baseball cross-appealed from this portion of the trial court's order.

The first issue we must determine is whether the trial court appropriately granted defendant's motion for summary judgment on the grounds that Youth Baseball had no duty to exercise ordinary care for Loosier under the circumstances of the instant case.

■ It is fundamental that there can be no recovery in tort for negligence unless the defendant has committed a breach of duty owed to the plaintiff. Whether under the facts of a given case, such a rela-

tionship exists between the parties so as to require a legal obligation be imposed upon one for the benefit of another is a question of law to be determined by the court. (*Zimmermann v. Netemeyer* (1984), 122 Ill. App. 3d 1042, 1045, 462 N.E.2d 502, 505.) In the absence of any showing upon which the court could infer the existence of a duty, no recovery is possible as a matter of law and summary judgment in favor of the defendant is proper. *Keller v. Mols* (1984), 129 Ill. App. 3d 208, 210, 472 N.E.2d 161, 163.

■ Whether the law imposes a duty upon a defendant for injuries to a plaintiff does not depend upon the factor of foreseeability alone but rather the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden upon the defendant must also be taken into account. (*Cf. Lance v. Senior* (1967), 36 Ill. 2d 516, 518, 224 N.E.2d 231, 233.) In the case at bar the same standard applies for imposition of a legal duty which we set forth in *Zimmermann*. As we noted in *Zimmermann*, the existence of a legal duty is not dependent on the factor of foreseeability but requires consideration of public policy and social requirements. (*Zimmermann v. Netemeyer* (1984), 122 Ill. App. 3d 1042, 1047, 462 N.E.2d 502, 506.) In *Zimmermann* we stated as follows:

"Whether a defendant should have 'foreseen' harm to a party injured is the test to be used by a jury in determining negligence. 'Foreseeability' enters into the negligence format only after the court has concluded that, at the time of the occurrence in question, the defendant was under a duty to guard against injury to the plaintiff." 122 Ill. App. 3d 1042, 1048, 462 N.E.2d 502, 507.

Continuing, we stated further:

" 'The duty issue, being one of law, is broad in its implication; the negligence issue is confined to the particular case and has no implications for other cases. There are many factors other than foreseeability that may condition a judge's imposing or not imposing a duty in the particular case, but the only factors for the jury to consider in determining the negligence issue are expressed in the foreseeability formula.' Green, Foreseeability in Negligence Law, 61 Colum. L. Rev. 1401, 1417-18." (*Zimmermann v. Netemeyer* (1984), 122 Ill. App. 3d 1042, 1048, 462 N.E.2d 502, 507, citing *Mieher v. Brown* (1973), 54 Ill. 2d 539, 301 N.E. 2d 307.)

In *Zimmermann* we clarified the role of "foreseeability of harm" and the fact that it enters the negligence format only after the court determines that at the time of the occurrence in question there existed

a duty on the part of the defendant to guard against injury to plaintiff. We additionally analyzed the policy basis of duty in *Zimmermann*. Quoting from Professor Prosser regarding the policy foundation of duty, we stated:

" ' "[D]uty" is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say the particular plaintiff is entitled to protection.

\* \* \*

[T]he courts have merely 'reacted to the situation in the way in which the great mass of mankind customarily react,' and that as our ideas of human relations change the law as to duties has changed with them. Various factors undoubtedly have been given conscious or unconscious weight, including convenience of administration, capacity of the parties to bear the loss, a policy of preventing future injuries, the moral blame attached to the wrongdoer, and many others. Changing social conditions lead constantly to the recognition of new duties. No better general statement can be made, than that the courts will find a duty where, in general, reasonable men would recognize it and agree that it exists.' (Prosser, Torts sec. 54, at 326-27 (4th ed. 1971).)" 122 Ill. App. 3d 1042, 1053, 462 N.E.2d 502, 510.

Using the foregoing analysis which we set forth in *Zimmermann* as our guide, we turn to the consideration of the issue of whether Youth Baseball owed a duty to Loosier to protect him from injury at all times when he might sell a raffle ticket or be enroute to sell a raffle ticket. Consideration of this issue depends on public policy considerations and not merely foreseeability as we noted in *Zimmermann*.

■ To the extent that public policy enters into the analysis, no reasons sounding in public policy would require that a duty of continuous protection be imposed. Youth Baseball provides a service to the community by sponsoring sports activities for young people without charge and it raises money for these activities by the sale of raffle tickets by its members on a voluntary basis. The sale of tickets is done only with parental permission. Ticket sales are made by the players at times other than when they are under the supervision of the coaches on the playing field. In fact, the ticket sales are made by the youths who participate in the program at any time when they are not either playing or practicing. We find that public policy does not require that citizens, who do volunteer work in coaching baseball and softball teams, provide supervision of all team members at the time when a team member is engaged in the activity of selling a raffle ticket. We find that the contrary is dictated by public policy, because

such a requirement would impose an unreasonable burden upon those who operate and sponsor the Youth Baseball program.

While defendant has a duty to supervise the activity of baseball and softball games while the players are on the field actively participating in the sport and entrusted by their parents to their coaches, we are unwilling to conclude that they are required to supervise those same players at any hour of the day or night when they might decide to sell a raffle ticket while they are under the care of their parents. Under the circumstances of the case at bar, public policy is best served by placing the burden of the care of the children upon their parents who permit them to participate in the raffle ticket sales. In the case at bar, we find that the care and control of the minor was with his parents. At the time of the accident the care of the minor had not been entrusted to youth Baseball. Loosier was selling tickets with the consent of his parents. He had gone to the shopping center with his friends with his mother's permission to sell tickets which were obtained from the defendant by his father. The only involvement of Youth Baseball was that it had provided the tickets that Loosier was selling with the permission of and while in the care of his parents. Under these circumstances, we find that Youth Baseball had no duty of supervision and affirm the trial court's entry of summary judgment in defendant's favor.

As an aside, we note that if foreseeability were to play a rule in the determination of duty, it is not reasonable or likely that a boy going to a shopping center with his teammates to sell raffle tickets will be requested by one of those teammates to steal from the store in which they are selling tickets; that when he refuses his teammates will threaten to beat him for not stealing; that his teammates will then chase him; and that in the chase he will run across an interstate highway and be struck by a truck. We find that the likelihood of such an occurrence was not even remotely foreseeable.

In addition to finding that Youth Baseball owed no duty to Loosier under the circumstances of this case, resulting in the entry of a summary judgment in defendant's favor, the trial court further found that Youth Baseball owed a duty to Loosier to provide supervision of raffle ticket sales, even though it did not define under what circumstances such a duty would exist. Defendant Youth Baseball cross-appealed from this portion of the trial court's order.

The defendant points out that the single issue before the trial court in the Motion for Summary Judgment was: "Did Youth Baseball owe a duty to Loosier to take measures to protect him from the injury he received as a result of the described occurrence?" The trial

court determined the answer to that question was no. The defendant notes however that in its order the court seemed to indicate that there would be some other circumstances when the plaintiff would be actively engaged in the sale of tickets under which a duty would be owed. We agree with the defendant that this finding of the trial court was erroneous inasmuch as it did not define under what circumstances such a duty would exist. Liability for negligence is predicated upon the requirement that a defendant use reasonable and ordinary care to protect a plaintiff under the circumstances in question. (*Sims v. Chicago Transit Authority* (1954), 4 Ill. 2d 60, 122 N.E.2d 221.) As we noted in *Zimmermann,* the courts in Illinois frequently have been called upon in negligence cases to determine whether a duty exists under the specific facts presented. (*Zimmermann v. Netemeyer* (1984), 122 Ill. App. 3d 1042, 1046, 462 N.E.2d 502, 505-06.) Although the issue regarding duty is broad in its implication, a duty, when created as a matter of law, is required to have a particular set of circumstances as a basis for its creation. In the case at bar, the trial court held that there may be some other circumstances under which the plaintiff would be actively engaged in the sale of tickets under which a duty would be owed by the defendant. We conclude that such portion of the trial court's order is erroneous inasmuch as the court appears to hold that a duty to use due care may arise under circumstances not presented to it for determination.

Concluding, we find that the trial court appropriately found that Youth Baseball owed no duty to exercise ordinary care for the plaintiff under the circumstances of the case at bar; consequently, that portion of the trial court's order is affirmed. Furthermore, we reverse that portion of the trial court's order which denied defendant's motion to dismiss plaintiff's complaint inasmuch as it was not based upon circumstances present in the case at bar.

Affirmed in part, reversed in part.

KARNS, J., concurs.

JUSTICE HARRISON, specially concurring.

Although I agree with the result reached in the majority opinion, I cannot accept the majority's unwillingness to recognize the relevance of foreseeability regarding the duty question for the reasons discussed in the dissenting opinion in *Zimmermann v. Netemeyer* (1984), 122 Ill. App. 3d 1042, 1054-56, 462 N.E.2d 502, 511-12 (Harrison, J., dissenting).