JOHN BRADLEY INDLECOFFER *et al.*, Plaintiffs, v. THE VILLAGE OF WADSWORTH, Defendant and Third-Party Plaintiff-Appellant (Immanuel Baptist Church, Third-Party Defendant-Appellee).

Second District    No. 2—95—1258

Opinion filed August 12, 1996.

934

INGLIS, J., dissenting.

Elizabeth A. Knight and David W. Conover, both of Knight, Hoppe, Fanning & Knight, Ltd., of Des Plaines, for appellant.

Byron L. Landau and David F. Ryan, both of Landau, Omahana & Kopka, Ltd., of Vernon Hills, for appellee.

JUSTICE DOYLE delivered the opinion of the court:

The Village of Wadsworth (Village) appeals from a trial court order which dismissed the Village's amended third-party complaint for contribution against third-party defendant, Immanuel Baptist Church (IBC). The trial court order granted IBC's combined motion to dismiss the complaint pursuant to section 2—615 and section 2—619 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615, 2—619 (West 1994)). The court granted the section 2—615 motion on the issue of proximate cause. The court granted the section 2—619 motion on the issue of waiver of liability. On appeal, the Village contends that the trial court erred because (1) IBC's negligence was a proximate cause of plaintiffs' injuries; and (2) the waiver of liability did not bar the complaint.

On the night of October 24, 1992, plaintiffs, John Bradley Indlecoffer and Cindy Richter, were participating in a treasure hunt sponsored by IBC. During the treasure hunt, plaintiffs were injured when the motor vehicle in which they were riding as passengers collided with another motor vehicle at the intersection of Mill Creek Road and Route 173 in Lake County. On October 7, 1993, plaintiffs filed a complaint against the Village alleging, in pertinent part, that the Village negligently "failed to maintain the roadway in a reasonable manner by failing to remove branches which had for months obstructed the traffic stop sign located at the intersection to the extent that the driver of the vehicle in which Plaintiffs were riding did not view the stop sign until it was too late to stop the vehicle."

After answering plaintiffs' complaint, the Village filed a third-

party complaint for contribution against IBC. The trial court dismissed the Village's complaint without prejudice, and the Village then filed an amended third-party complaint for contribution against IBC. The amended complaint, which refers to IBC both as "IBC" and as "the third party defendant," and to the Village as "Wadsworth," contained the following relevant allegations:

"3. That Immanuel Baptist Church sponsored a treasure hunt on October 24, 1992, wherein each participant was required to pay a $10.00 registration fee to the third-party defendant.

4. That at the time and place of the plaintiffs' injuries, plaintiffs were active participants in the 'IBC Treasure Hunt'. Further, that the driver of the vehicle in which plaintiffs were traveling at the time of the occurrence, David Plunkett, was also a participant in the IBC Treasure Hunt.

5. That immediately prior to the commencement of the IBC Treasure Hunt, certain organizers of the event surveyed, inspected and timed the routes on the circuit between the various clue sites.

6. That the third party defendant promulgated rules by which the treasure hunt was to be carried out. Further that the participating teams competed against one another and a winner was to be adjudged at the conclusion of the competition. The primary judging criteria [*sic*] for the contest was the speed at which a team could negotiate the course within the set time limitation.

7. That the contest was organized in such a manner that the teams of contestants moved through a circuit of clue locations in the same order and that an advantage could be gained by one team from following the vehicle of another team that had solved the riddle of the next clue site. Further, that plaintiff's [*sic*] team and driver believed they were being followed by other teams in the competition on several occasions during the night of October 24, 1992.

8. That the IBC treasure hunt rules required that the participants engage in complex problem solving while operating a motor vehicle on unfamiliar roadways.

9. That plaintiff's [*sic*] team of treasure hunt participants stopped at the clue location on north Mill Creed [*sic*] Road immediately prior to the collision at Route 173 and Mill Creek Road. When plaintiff's [*sic*] team believed it had solved the clue, several team members executed a prearranged signal and the plaintiff's [*sic*] group rushed back to its vehicle hoping to avoid being followed by other teams who had not yet solved the clue to the next location for themselves.

10. That plaintiff's [*sic*] team was forced to return to the Mill Creek Road clue site after going a short distance, when it was

discovered that no one had retrieved the required 'clue sheet' from that location. Plaintiff's [sic] vehicle then hurriedly left the site traveling southbound on Mill Creek Road.

11. That the vehicle in which plaintiffs were riding was driven at a speed well in excess of the speed limit as it approached the intersection of Route 173 and Mill Creek Road.

12. That southbound traffic on Mill Creek Road was regulated by a stop sign located on the northwest corner of the above intersection. Further that at the time of the collision, the stop sign was clearly visible for a distance of more than 300 feet north of the intersection.

13. That the intersection of Route 173 and Mill Creek Road was illuminated at the time of the collision by an overhead street light located on the southeast corner of the intersection.

14. That David Plunkett and the other contest participants in the plaintiff's [sic] vehicle failed to identify the above stop sign until their vehicle was approximately 50 feet north of the intersection. Said vehicle was traveling at an excessive speed that would not allow it to be stopped prior to the intersection with Route 173.

15. That the vehicle in which plaintiffs were riding entered the intersection with Route 173 and Mill Creek Road without first stopping and collided with another automobile traveling eastbound on Route 173.

16. That at the time and place of plaintiffs' injuries, Immanuel Baptist Church owed a duty to exercise reasonable care in its organization of the 'IBC Treasure Hunt' and the instruction and supervision of the participants.

17. That if the trier of fact determines that Wadsworth is liable to the plaintiffs, which liability is expressly denied by Wadsworth, then plaintiffs' damages were caused by the negligence of Immanuel Baptist Church in one or more of the following respects:

   a. Promulgated rules that encouraged contestants to operate motor vehicles in a careless and reckless manner during their participation in the treasure hunt activities;

   b. Failed to adequately instruct, monitor and supervise contestants' safe participation in the treasure hunt activities;

   c. Failed to adequately prevent and/or warn against the participants' violation of state traffic laws;

   d. Failed to warn treasure hunt participants concerning dangers it knew or should have known were presented by the rules which it promulgated for the event; and

   e. Failed to warn treasure hunt participants of dangers it knew were posed by the conditions present at the intersection of Route 173 and Mill Creek Road.

18. That as a result of the aforesaid acts and/or omissions, Immanuel Baptist Church proximately caused or contributed to David Plunkett's operation of the motor vehicle in a manner which resulted in the damages claimed by the plaintiffs."

IBC responded to the Village's amended complaint for contribution with a combined motion to dismiss the complaint under sections 2—615 and 2—619 of the Code. 735 ILCS 5/2—615, 2—619 (West 1994). In its motion to dismiss under section 2—615, IBC contended that it owed no duty to plaintiffs and that any alleged negligence by IBC was not the proximate cause of plaintiffs' injuries. In its motion to dismiss under section 2—619, IBC contended that plaintiffs each voluntarily executed a written waiver of liability that released IBC from all liability related to the treasure hunt. IBC argued that the waiver of liability also discharged it from all liability for any contribution to any other tort-feasor.

On July 6, 1995, the trial court entered an order on the matter. The order (1) denied IBC's section 2—615 motion to dismiss on the issue of duty; (2) granted IBC's section 2—615 motion to dismiss on the issue of proximate cause; (3) denied IBC's section 2—619 motion to dismiss on the waiver of liability issue as to Indlecoffer; and (4) granted IBC's section 2—619 motion to dismiss on the waiver of liability issue as to Richter.

On August 29, 1995, the trial court entered an order granting IBC's motion for a finding of a final judgment under Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)). The order stated that there was no just reason to delay the enforcement or appeal of the trial court's July 6, 1995, order dismissing the Village's amended complaint for contribution. The Village's timely appeal followed.

We will first address the issue of waiver of liability. The trial court granted IBC's section 2—619 motion to dismiss the Village's complaint for contribution on the waiver of liability issue only with respect to Richter. The court denied the motion as to Indlecoffer. The record shows that Richter subsequently voluntarily dismissed her action against the Village.

■ On appeal, IBC contends that the issue of waiver of liability is moot because of Richter's voluntary dismissal. IBC argues that, in view of Richter's voluntary dismissal, there is no longer a controversy regarding contribution as to Richter, and because the trial court dismissed the Village's amended complaint on the basis of waiver of liability only with respect to Richter, the waiver of liability issue is moot. We agree.

An issue is moot if an actual controversy between the parties no longer exists and the interests or the rights of the parties are no lon-

ger in controversy. *Novak v. Rathnam*, 106 Ill. 2d 478, 482 (1985). In this case, Richter's voluntary dismissal ended the controversy between Richter and the Village. Consequently, there is no longer a need for the Village to seek contribution from IBC as to Richter. Because the trial court dismissed the Village's amended complaint for contribution on the issue of the waiver of liability only as to Richter, there is no longer an actual controversy between the parties with respect to the issue of waiver of liability. Thus, the waiver of liability issue is moot. Accordingly, it is unnecessary for us to further consider the issue in this appeal.

■ We will next briefly discuss the issue of duty. In its appellate brief, the Village raised the issue of IBC's duty to plaintiff Indlecoffer. In its brief, IBC responded that we should strike and disregard the section of the Village's brief that deals with the duty issue. IBC based its position on the fact that the trial court order that the Village appealed from specifically denied IBC's motion to dismiss on the issue of duty.

We agree with IBC that because the trial court specifically denied IBC's motion to dismiss with respect to the issue of duty, it was unnecessary for the Village to raise the issue of duty on appeal. It is apparent on the face of the trial court order that the trial court did not dismiss the Village's complaint on the ground of a failure to establish a duty. Consequently, we will disregard the section of the Village's brief that addresses the duty issue.

We next turn to the central issue of this appeal, the issue of proximate cause. The trial court dismissed the Village's complaint for contribution against IBC as to both plaintiffs on the ground that the complaint failed to sufficiently establish proximate cause between IBC's alleged negligent conduct and plaintiffs' injuries.

On appeal, the Village asserts that IBC argued in its motion to dismiss the amended complaint that any negligence on IBC's part was not a proximate cause of the underlying accident, but instead was merely a condition to the occurrence of the accident. The Village further asserts that IBC contended that any negligence on its part was superseded by the alleged intervening negligence of the Village and/or the driver of the vehicle in which plaintiffs were riding when they were injured (hereinafter the driver) and that these instances of intervening negligence were the proximate cause of plaintiffs' injuries.

The Village contends on appeal that neither its alleged negligence nor the driver's alleged negligence constituted intervening acts that superseded IBC's negligent conduct in sponsoring and organizing the treasure hunt. The Village argues that IBC's conduct was therefore a

proximate cause of plaintiffs' injuries. The Village asserts that the trial court erred in deciding the proximate cause issue as a matter of law when jurors could come to different conclusions based on the facts of this case and the inferences to be drawn from those facts.

IBC responds, as it did below, that its alleged conduct was not a proximate cause of plaintiffs' injuries as a matter of law. IBC argues that (1) its alleged conduct was not a cause of plaintiffs' injuries, but was, at most, a condition; and (2) the negligent conduct of both the Village and the driver was an intervening act that superseded any causation attributable to IBC.

In reviewing the dismissal of a complaint under section 2—615, a reviewing court must determine whether the complaint, when viewed in the light most favorable to the plaintiff, alleged facts sufficient to establish a cause of action upon which relief may be granted. *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 46 (1991). The review is *de novo*, and, therefore, a reviewing court is not required to defer to the trial court's judgment. *Stinson v. Physicians Immediate Care, Ltd.*, 269 Ill. App. 3d 659, 661-62 (1995).

■ A court should grant a section 2—615 motion to dismiss only if it clearly appears that no set of facts could ever be proved that would entitle the plaintiff to recover. *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 115 (1995). In reviewing an order that granted a section 2—615 motion to dismiss, a court should take as true all well-pleaded facts and all reasonable inferences from those well-pleaded facts. *Mt. Zion State Bank*, 169 Ill. 2d at 115.

■ In order to state a cause of action in negligence, the plaintiff must plead sufficient facts to establish that the defendant owed the plaintiff a duty of care, that the defendant breached that duty, and that the breach was the proximate cause of injuries to the plaintiff. *Vaughn v. City of West Frankfort*, 166 Ill. 2d 155, 157-58 (1995). In this case, the negligence factor on which the trial court based its dismissal order was proximate cause. Proximate cause is generally a factual matter for a jury to decide. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 114 (1995).

In *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432 (1992), our supreme court discussed proximate cause at some length. In *Lee*, the court stated that proximate cause consists of two distinct elements: cause in fact and legal cause. 152 Ill. 2d at 455. A defendant's conduct is a cause in fact of the plaintiff's injury if the conduct was a material element and substantial factor in bringing about the injury. 152 Ill. 2d at 455. Where reasonable minds could differ as to whether a defendant's conduct was a cause in fact of the plaintiff's injury, then

the matter is for the jury to decide. 152 Ill. 2d at 455. Legal cause turns on foreseeability because negligent conduct is deemed a proximate cause of an injury if a reasonable man would foresee the injury as a likely result of the conduct. 152 Ill. 2d at 456.

In this case, to support its position that its conduct was not a proximate cause of plaintiffs' injuries but merely a condition, IBC relied heavily on *Quintana v. City of Chicago*, 230 Ill. App. 3d 1032 (1992). In *Quintana*, the plaintiff, a pedestrian, was crossing a city street at an intersection where the traffic lights were inoperable. 230 Ill. App. 3d at 1033. As the plaintiff was crossing the street, a collision occurred in the intersection involving two or more cars, and one of the cars struck the plaintiff, injuring her. 230 Ill. App. 3d at 1033. The plaintiff brought a negligence action against the drivers of the cars involved in the accident and against the city. The trial court granted the city's motion for summary judgment on the ground that the city's failure to maintain traffic lights was not a proximate cause of the plaintiff's injuries. 230 Ill. App. 3d at 1033-34.

In affirming, the appellate court particularly noted that both drivers testified that as they approached the intersection they observed that the traffic lights were not operating. Each also testified to having come to a stop before entering the intersection. The court concluded that the accident must have occurred because one of the drivers disobeyed a statutory requirement to regard the inoperative signal light as a stop sign.

Accordingly, the court found that the inoperative traffic lights were merely a condition by which the plaintiff's injuries were made possible and that any causal connection between the city's conduct and the plaintiff's injuries was broken by the conduct of the car drivers in consciously failing to heed a statutory duty to stop at an inoperative signal light. 230 Ill. App. 3d at 1035. In its analysis, the *Quintana* court stated:

> "If the negligence charged does nothing more than furnish a condition by which the injury is made possible and that condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury where the subsequent act is an intervening efficient cause which breaks the causal connection between the original wrong and the injury, and itself becomes the proximate or immediate cause." 230 Ill. App. 3d at 1035.

We note that in the present case, unlike the facts of *Quintana*, the Village's complaint alleged that the plaintiff failed to see the obscured stop sign in time to stop before entering the intersection. We consider this circumstance to be an important distinction in our

analysis of whether plaintiff's action can be regarded as an intervening cause sufficient to break the causal connection between any negligence of IBC and the injury.

We are aware that Illinois courts recognize the distinction between a condition and a cause. See, *e.g., Thompson v. County of Cook*, 154 Ill. 2d 374, 383 (1993). However, we agree with a recent appellate court opinion which stated that "[f]raming the analysis in terms of 'condition versus cause' does little to resolve questions of breach of duty and proximate cause in a particular case." *Jefferson v. City of Chicago*, 269 Ill. App. 3d 672, 675 (1995).

■ We believe that the better analysis in resolving a proximate cause question focuses on foreseeability. Under a foreseeability analysis, the negligence of a defendant does not constitute a proximate cause of a plaintiff's injuries if some intervening act supersedes the defendant's negligence, but if the defendant could reasonably foresee the intervening act, then the intervening act does not relieve the defendant of liability. *Bentley v. Saunemin Township*, 83 Ill. 2d 10, 15 (1980).

In this case, the Village's amended complaint sought contribution from IBC because of IBC's alleged negligence. The complaint alleged that (1) plaintiffs were injured while participating in a treasure hunt that IBC sponsored, organized, and controlled through rules that IBC promulgated; (2) IBC surveyed, inspected, and timed the treasure hunt course; (3) the treasure hunt rules encouraged contestants in the treasure hunt to operate motor vehicles in a careless and reckless manner while participating in the treasure hunt because the participating teams competed against each other with the winning team to be determined by the speed with which the team negotiated the treasure hunt course; and (4) during the treasure hunt, while speeding, the vehicle carrying plaintiffs failed to stop for a stop sign and therefore collided with another car in the intersection of Mill Creek Road and Route 173.

■ Based on these allegations, viewed in the light most favorable to the Village, IBC could have reasonably foreseen the purported intervening acts in this case. Through its sponsorship of the treasure hunt, unlike the defendant city in *Quintana*, IBC played an active role in the events surrounding plaintiffs' injuries. Through its organization of the treasure hunt, IBC caused the treasure hunt contestants to participate in teams, riding in cars through a circuit of clue locations. Through the treasure hunt rules, which it promulgated, IBC set a process in motion that could reasonably be expected to cause drivers of the cars in the treasure hunt to speed. A car speeding while participating in the treasure hunt could reasonably be

foreseen to be unable to stop for a stop sign or other traffic control device, enter an intersection without stopping, and collide with another vehicle.

Through its survey and inspection of the routes on the treasure hunt circuit, IBC arguably should have noticed whether the stop signs at the intersections along the treasure hunt course were obscured. If any stop sign was obscured, then it was reasonably foreseeable that the obscured stop sign would exacerbate the danger to the treasure hunt participants as the car in which they were riding might be speeding as it approached the intersection controlled by the obscured stop sign and, as a result, be unable to stop.

Thus, under the facts of this case as alleged in the Village's amended complaint, we cannot say, as a matter of law, that the purported intervening acts were the kind of new and independent force that would break the causal connection between IBC's alleged negligence and plaintiffs' injuries. See *Jefferson*, 269 Ill. App. 3d 672. Once it is established that the causal connection between the original wrong and the plaintiffs' injuries may be unbroken, a jury can consider that there may be more than one proximate cause. *Jefferson*, 269 Ill. App. 3d 672.

Based on the foregoing, we conclude that whether IBC's conduct proximately caused plaintiffs' injuries in this case is for the jury to determine. Consequently, the trial court erred when it dismissed the Village's amended complaint for contribution on the issue of proximate cause.

We therefore reverse the trial court order and remand the cause for further proceedings.

Reversed and remanded.

RATHJE, J., concurs.

JUSTICE INGLIS, dissenting:
I respectfully dissent from the opinion of the majority and would affirm the order of the circuit court. I believe the result reached by the majority in this case imposes an unreasonable duty on IBC.

The majority concludes that, by taking an active role in the events surrounding plaintiffs' injuries, it was reasonable for IBC to foresee that the vehicle in which plaintiffs were occupying would speed through a stop sign and would collide with another vehicle. The test here is whether the first wrongdoer reasonably might have anticipated the intervening cause as a natural and probable result of its own wrongdoing. *Lindenmier v. City of Rockford*, 156 Ill. App. 3d

76, 91 (1987). I do not believe IBC reasonably could have anticipated that the vehicle plaintiffs were occupying would disregard the law merely because they were participating in a game. " 'As a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability.' " *Novander v. City of Morris*, 181 Ill. App. 3d 1076, 1080 (1989), quoting W. Prosser, Torts § 41, at 236 (4th ed. 1971).

After concluding that there is a foundation for proximate cause, the majority further imposes a duty on IBC to inspect the route of the treasure hunt for obscured stop signs, a step not mandated by their analysis of foreseeability. The implications of this result would foreclose all group-sponsored activity using vehicles. The duty imposed by the majority would seemingly require IBC to trim foliage obscuring stop signs. Is IBC to undertake the responsibility of the agencies to which we pay our tax dollars to maintain the public highways? The costs and consequences of creating such a duty are great.

In this case, I would affirm the dismissal of the Village's complaint against IBC on the issue of proximate cause.