CAROL DORGE, Plaintiff-Appellant, v. ALICE MARTIN, Defendant-Appellee (Zurich American Insurance Company *et al.*, Defendants).

First District (2nd Division)    No. 1—08—2046

Opinion filed March 10, 2009.

Total Environmental Solutions, P.C., of Oakbrook Terrace (William D. Seith, of counsel), and Carol L. Dorge, of Lake Bluff, for appellant.

Querrey & Harrow, Ltd., of Chicago (Jennifer L. Medenwald, Dennis A. Marks, and Christopher P. Keleher, of counsel), for appellee.

JUSTICE KARNEZIS delivered the opinion of the court:

This appeal arises from an order of the circuit court granting summary judgment to defendant Alice Martin in plaintiff Carol Dorge's personal injury action against her. Plaintiff sought damages for injuries she suffered while participating in a sailboat race organized, in part, by defendant as a fund-raiser. Plaintiff argues on appeal that the court erred in granting summary judgment to defendant because (1) defendant was a sponsor, organizer and operator of the fund-raiser and, therefore, owed a duty of care to plaintiff; (2) defendant was required to use reasonable care in her sponsorship, organization and operation of the fund-raiser to avoid injury to plaintiff during the

event; (3) defendant's breach of duty is a question of material fact; and (4) whether defendant's breach of duty proximately caused plaintiff's injury is a question of material fact. We affirm.

## Background

In May 2002, plaintiff suffered permanent injury to her right hand and arm while on a sailboat participating in a race on Lake Michigan. The race was a regularly scheduled annual event put on by the Burnham Harbor Yacht Club (the club). In 2002, the club named the race the Kaz Regatta in honor of a club member who died from breast cancer and, for the first time, used the race as a fund-raiser for breast cancer research. The Chicago Women's Sailing Network (CWSN), an informal organization of female racers, helped organize the fund-raising aspect of the race. It distributed flyers advertising the race and soliciting donations, in exchange for which the donor would be allowed to sail on one of the racing sailboats during the race. Defendant, an experienced sailor who raced her own boat, served as commodore of the CWSN. She solicited skippers of boats participating in the regatta to take donors on their boats during the race, helped draft the flyer, distributed the flyer, served as the contact person for donors interested in sailing on the racing boats and matched the donors with the boats based on their sailing experience and the size of the boat.

Plaintiff expressed interest in riding on one of the racing yachts. Plaintiff had some prior sailing experience. She sailed as a child, in high school and in college. At the time of her accident, she was a member of the Lake Bluff Yacht Club, was dating an avid sailor, had sailed with him approximately 15 times, both on his boat and on other boats, had ridden on boats during smaller races a few times and, the day before her accident, had been on a 35-foot sailboat during a race. Plaintiff "felt comfortable" riding sailboats on Lake Michigan but was not an experienced sailor.

Defendant contacted Ron Elsasser, the owner and skipper of the 47-foot yacht Coup d'Etat, and asked whether he would be willing to take plaintiff, whom she described as having no experience, on his boat. Elsasser had already agreed to take one inexperienced donor aboard for the race. Defendant reasoned that racing on the Coup d'Etat, one of the larger, slower boats in the race, would not be as frightening for an inexperienced sailor and, knowing the boat and Elsasser's capabilities, the Coup d'Etat could handle an additional inexperienced person. She knew the Coup d'Etat had a large crew aboard and plaintiff, therefore, would not be expected to perform any crew functions but rather probably would be "railmeat." Railmeat are guests and crew on a sailboat who are assigned to sit on the rail located

on the high side of the boat as the boat tilts in the wind. When the boat tacks from one course heading to another, as happens many times an hour, the people sitting on the rail move, in a kneeling/crouched position, from their side of the boat to the other side, as the other side starts to raise out of the water to become the high side. Elsasser agreed to take plaintiff aboard. Defendant put plaintiff in touch with Elsasser and had nothing further to do with plaintiff's participation in the race.

Plaintiff met Elsasser and his crew at the Coup d'Etat on the day of the race. The crew had been with Elsasser for several years, including on the boat he owned before the Coup d'Etat. Prior to the race, Elsasser gave his standard lecture about safety, explaining the sailing conditions and how the boat and crew operated during a race. He warned that the lines have heavy loads when the sails are full of wind, to look out for the lines, to avoid holding onto or pulling the lines and to be aware of all body parts in relation to the moving equipment on the boat. During the race, plaintiff and others, including the two other guests on the boat and some of the Coup d'Etat crew, were assigned to be railmeat and would move from one side of the boat to the other as the course and winds demanded. Plaintiff had performed the same function the previous day on another boat and had practiced the maneuver with the other railmeat on the Coup d'Etat to the satisfaction of the supervising crew member during practice tacks shortly before the race.

During the Coup d'Etat's first tacking maneuver in the race, about a mile from the start, plaintiff's hand became entangled in a line lying on the deck as she raised herself from the rail to a crouching position to move to the opposite side of the boat. The line was attached to the jib sail, which was in the process of coming across the boat from one side to the other. As the jib swept across the boat and wind filled the sail, it tightened the line around plaintiff's arm and the line crushed her arm.

In April 2006, plaintiff filed suit for her injuries against the club, the CWSN, the boat's owners, the owners' insurance companies, the boat's crew and defendant. Only plaintiff's claim against defendant is at issue here. Plaintiff's second amended complaint alleged, in relevant part, that defendant and the CWSN organized, planned, administered, managed and controlled the sailing event for which they solicited and registered participants, made reservations and placed participants in crew slots on racing yachts. She asserted she was inexperienced in yacht racing and defendant, despite knowing she was inexperienced and had minimal boating experience, placed her on the Coup d'Etat, where she was expected to participate as a crew member. She made

numerous negligence allegations against defendant, alleging defendant was careless in failing to match her with an appropriate vessel, captain and crew to accommodate her inexperience; investigate the captain and crew of the Coup d'Etat regarding their operating procedures, plans and accommodations for plaintiff; implement safety rules for plaintiff's participation in the race; prevent plaintiff from being placed in a position of danger; fully inform plaintiff of the dangers of being on the Coup d'Etat; and investigate the abilities and experience of the crew of the Coup d'Etat.

Defendant moved for summary judgment. The court granted summary judgment to Martin on June 15, 2007. On June 30, 2008, the court dismissed the action against all remaining defendants with prejudice. On July 25, 2008, plaintiff timely appealed the court's grant of summary judgment to Martin.

## Analysis

### Standard of Review

A drastic means of disposing of litigation, a motion for summary judgment is granted only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1994); *Axen v. Ockerlund Construction Co.*, 281 Ill. App. 3d 224, 229, 666 N.E.2d 693, 696 (1996); *Purtill v. Hess*, 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871 (1986). We review the trial court's entry of summary judgment *de novo*. *Axen*, 281 Ill. App. 3d at 229, 666 N.E.2d at 696.

### Duty of Care

In a negligence action, the plaintiff must set out sufficient facts to show the existence of a duty owed by the defendant to the plaintiff, a breach of that duty and an injury proximately caused by the breach. *Godee v. Illinois Youth Soccer Ass'n*, 327 Ill. App. 3d 695, 697, 764 N.E.2d 591, 593 (2002). If a plaintiff does not make a showing from which the court could infer the existence of a duty, the plaintiff cannot recover as a matter of law and summary judgment in favor of the defendant is proper. *Godee*, 327 Ill. App. 3d at 697, 764 N.E.2d at 593.

Citing *Indlecoffer v. Village of Wadsworth*, 282 Ill. App. 3d 933, 671 N.E.2d 1127 (1996), plaintiff asserts defendant owed her a duty of care because a sponsor or organizer of an event has a duty of care to participants in an event. Plaintiff's reliance on *Indlecoffer* is misplaced. The holding in *Indlecoffer* is not that every sponsor or organizer of an event has a duty of care to event participants. In *Indlecoffer*, the court

found that a church, through its sponsorship and organization of a scavenger hunt during which some of the participants were injured, could have proximately caused the plaintiffs' injuries. *Indlecoffer*, 282 Ill. App. 3d at 942, 671 N.E.2d at 1133. Because the church played an active role in setting the rules of the hunt, determining it would be conducted as a race by car, setting the route of the treasure hunt, inspecting the route, ordering the participants to ride in teams with the winner being the team who finished first, it set in motion a treasure hunt in which the team drivers could be expected to speed with the foreseeable consequence that an accident or collision would result. *Indlecoffer*, 282 Ill. App. 3d at 942-43, 671 N.E.2d at 1133. The issue in *Indlecoffer* involved proximate cause, not the existence of a duty.

Even if, as plaintiff asserts, the sponsor's duty can be assumed in *Indlecoffer*, there is no evidence to show that defendant was a sponsor or organizer of the regatta. Defendant testified she was asked to attend a meeting at the club in order to help brainstorm ideas for the fund-raiser, which was sponsored and organized by the club just as it had always sponsored and organized the race before it became a fundraiser. She volunteered to coordinate the sail-along portion of the fund-raiser once the planning committee decided to offer it. She asserts she had no control over how the race was organized or how the skippers raced their boats and plaintiff does not show otherwise. There is no question of fact on the issue of whether defendant was a sponsor or organizer of the race. Plaintiff does not show defendant was anything more than the volunteer CWSN contact person coordinating the sail-along fundraising component of the regatta. Accordingly, we find no legal duty owed by defendant to plaintiff on the basis of her control over or sponsorship of the race.

Plaintiff argues defendant voluntarily assumed a duty of care toward her because liability can arise from the negligent performance of a voluntary undertaking. *Brunsfeld v. Mineola Hotel & Restaurant, Inc.*, 119 Ill. App. 3d 337, 342, 456 N.E.2d 361, 365 (1983). She asserts defendant assumed the duty because defendant was an experienced sailor, had raced yachts, knew firsthand the dangers of being on a racing yacht during a race, knew an inexperienced sailor would be in danger on a racing yacht, knew plaintiff was inexperienced and failed to provide for plaintiff's safety on the Coup d'Etat.

Defendant was an experienced racer, raced her own sailboat with a crew and the occasional inexperienced guest and admitted racing was dangerous. But, just because defendant knew of the dangerous conditions aboard a racing boat does not mean, without more, that she took on a duty of care toward plaintiff. There is no duty to assume a

voluntary duty. *Brunsfeld*, 119 Ill. App. 3d at 342, 456 N.E.2d at 365. Even if defendant knew about the dangers posed to the donors, "mere knowledge of a hazardous condition does not give rise to a duty to correct it where a defendant is not responsible for the existence of that condition." *Brunsfeld*, 119 Ill. App. 3d at 342, 456 N.E.2d at 365.

Granted, when someone voluntarily undertakes a duty, she must perform the duty with due care or with such competence and skill as the volunteer possesses. *Poelker v. Macon Community Unit School District No. 5*, 212 Ill. App. 3d 312, 315, 571 N.E.2d 479, 480 (1990). However, "[t]he scope of the duty to guard against negligence in a voluntary undertaking is limited by the extent of the undertaking." *Castro v. Chicago Park District*, 178 Ill. App. 3d 348, 354, 533 N.E.2d 504 (1988). The extent of defendant's undertaking was limited to soliciting and coordinating the donor's participation in the race. She drafted and distributed flyers, solicited donations, solicited skippers to take donors during the race and matched donors with sailboats. She was not involved in the race itself, in the way it was organized or in how the captains raced their boats. The club ran the race, as it had done in previous years, and the captains were in charge of their boats. Defendant may have had a duty to match donors with yachts and skippers able to accommodate a particular donor's level of inexperience, but there is no indication she failed in that duty. She knew plaintiff was relatively inexperienced, matched plaintiff to a boat and skipper she considered well able to accommodate an inexperienced sailor and told Elsasser plaintiff was inexperienced. She assumed plaintiff would serve as railmeat during the race, rather than as a member of the crew, and was correct in her assumption.

Further, although there was a possibility of injury given that sailboat racing is a dangerous sport, more than a mere possibility of injury is required for a duty to exist. *Poelker*, 212 Ill. App. 3d at 315, 571 N.E.2d at 481. In order for there to be a duty, the injury must have been foreseeable. *Poelker*, 212 Ill. App. 3d at 315, 571 N.E.2d at 481. Here, the injury was not reasonably foreseeable. Racing is dangerous, but defendant, Elsasser and his crew were experienced racers and both defendant and Elsasser tried to make sure plaintiff had a safe and enjoyable sail. Both Elsasser and defendant had raced with inexperienced guests as railmeat before and never had an incident of injury to their guests. There was no reason to suppose that plaintiff's participation as a guest would lead to a different result, a foreseeable injury.

Moreover, even if an injury was foreseeable, foreseeability alone will not create a legal duty. *Loosier v. Youth Baseball & Softball, Inc.*, 142 Ill. App. 3d 313, 316, 491 N.E.2d 933, 935 (1986). The relationship

between defendant and plaintiff, the likelihood of injury, the magnitude of guarding against the injuries, and the consequences of placing that burden on defendant should all be considered. *Loosier*, 142 Ill. App. 3d at 316, 491 N.E.2d at 935. There was no relationship between defendant and plaintiff beyond that of donor and fund-raiser coordinator/contact person. Both state they barely knew each other and that plaintiff's expression of interest in sailing on one of the racing yachts was one of their few direct contacts. Defendant had a duty to assign plaintiff to a yacht she considered able to cope with plaintiff's inexperience. There is no evidence that she failed to exercise reasonable care in performing this limited duty and, therefore, no question of fact regarding her breach of this limited duty, let alone a question that her breach proximately caused plaintiff's injury. The court did not err in granting summary judgment to Martin.

For the reasons stated above, we affirm the decision of the circuit court.

Affirmed.

HOFFMAN and SOUTH, JJ., concur.